**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EDWIN RIVERA,

                    Plaintiff,

       - against -

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, *et al.*,

                  Defendants.

**19 Civ. 3101 (KPF)**

## MEMORANDUM OF LAW IN SUPPORT OF THE
## FEDERAL DEFENDANTS' MOTION TO DISMISS

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for the Federal Defendants
86 Chambers Street, Third Floor
New York, New York 10007
Tel:    (212) 637-2699

JOSHUA E. KAHANE
Assistant United States Attorney
   – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND ............................................................................................................... 2

    A.    Factual and Procedural Background ................................................................ 2

    B.    The Immigration Petitions and Applications at Issue in This Case ...................... 3

        1.    Special Immigrant Religious Worker Petitions: Form I-360 ...................... 3

        2.    Request by Organization for Accreditation: Form EOIR 31-A ................. 6

ARGUMENT ................................................................................................................... 7

    A.    The SAC Should Be Dismissed for Failure to Comply with Rule 8 ..................... 7

    B.    The SAC Should be Dismissed Under Rule 12(b)(1) with Respect to 15 Petitions Filed by Francisco Bido ....................................................................... 9

    C.    The SAC Fails to State a Claim and Should Be Dismissed Under Rule 12(b)(6) 11

        1.    The SAC Fails to State a Claim of Wrongful Denial of Forms I-360 and EOIR 31-A ................................................................................ 12

        2.    The SAC Fails to State a Claim for Intentional Infliction of Emotional Distress .......................................................................................... 15

        3.    The SAC Fails to State a Claim for Negligence and Breach of Duty ....... 16

        4.    The SAC Fails to State a Claim for Violation of 42 U.S.C. § 1983 ......... 18

        5.    The SAC Fails to State a Claim for Violation of 5 U.S.C. § 702 ............. 21

CONCLUSION ................................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 11, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 7, 11

*Bellissimo v. Mitchell*,
    122 A.D.3d 560 (2d Dep't 2014) ................................................................................. 15

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................................. 18, 19

*Brass v. Am. Film Tech., Inc.*,
    987 F.2d 142 (2d Cir. 1993) ......................................................................................... 12

*Cain v. Mandl Coll. of Allied Health*,
    No. 14 Civ. 1729 (ER), 2017 WL 2709743 (S.D.N.Y. June 22, 2017) ..................... 15, 16

*Carlson v. Green*,
    446 U.S. 14 (1980) ........................................................................................................ 19

*Caronia v. Philip Morris USA, Inc.*,
    715 F.3d 417 (2d Cir. 2013) ......................................................................................... 17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ......................................................................................... 11

*Chanko v. Am. Broad. Co. Inc.*,
    49 N.E.3d 1171 (N.Y. 2016) ........................................................................................ 16

*Culbertson v. Cameron*,
    No. 08-CV-4838 (SLT) (LC), 2010 WL 1269777 (E.D.N.Y. Mar. 30, 2010) ................ 21

*Da Costa v. Marcucilli*,
    675 Fed. App'x 15 (2d Cir. 2017) .................................................................................. 8

*Davila v. Gutierrez*,
    330 F. Supp. 3d 925 (S.D.N.Y. 2018) .......................................................................... 13

*Davila v. Lang*,
    343 F. Supp. 3d 254 (S.D.N.Y. 2018) .......................................................................... 14

*Davis v. Passman*,
    442 U.S. 228 (1979) ...................................................................................................... 19

*Djangmah v. Magafara,*
    No. 16-CV-6136 (VSB), 2018 WL 4080346 (S.D.N.Y. Aug. 26, 2018) .......................... 8

*Embassy of the Blessed Kingdom of God for all Nations Church v. Attorney Gen. U.S.,*
    591 F. App'x 161 (3d Cir. 2014) .................................................. 10

*Empire Trust Co. v. United States,*
    324 F.2d 507 (2d Cir. 1963) ...................................................... 9

*George v. Evans,*
    311 F. App'x 426 (2d Cir. 2009) ................................................ 21

*George v. Gutierrez,*
    No. 1:04cv3901-ENV-LB, 2007 WL 1029002 (E.D.N.Y. Mar. 28, 2007) ..................... 21

*Golden Hill Paugussett Tribe of Indians v. Rell,*
    463 F. Supp. 2d 192 (D. Conn. 2006) ........................................... 12

*Grant v. U.S.,*
    No. 17 Civ. 2172 (PGG), 2018 WL 3574865 (S.D.N.Y. July 25, 2018) ..................... 18

*Howell v. N.Y. Post Co.,*
    612 N.E.2d 699 (N.Y. 1993) ...................................................... 16

*In re Lululemon Sec. Litig.,*
    14 F. Supp. 3d 553 (S.D.N.Y. 2014) ............................................. 11

*Islamic & Educ. Ctr. Ezan of Greater Des Moines v. Napolitano,*
    826 F. Supp. 2d 1122 (S.D. Iowa 2011) .......................................... 10

*Jacobs v. Verizon Comm'ns, Inc.,*
    No. 16 Civ. 1082 (PGG), 2017 WL 8809714 (S.D.N.Y. Sept. 28, 2017) ................... 12

*K.C. v. Chappaqua Cent. Sch. Dist.,*
    No. 16 Civ. 3138 (KMK), 2018 WL 4757965 ...................................... 12

*Kamen v. Am. Tel. & Tel. Co.,*
    791 F.2d 1006 (2d Cir. 1986) .................................................... 10

*Khalid v. DHS, USA,*
    1 F. Supp. 3d 560 (S.D. Tex. 2014) ............................................. 10

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004), *cert. denied*, 136 S. Ct. 800 (2016) .............................. 10

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011) ..................................................... 12

*Lia v. Saporito*,
909 F. Supp. 2d 149 (E.D.N.Y. 2012) ............................................................ 12

*Lubrano v. United States*,
751 F. Supp. 2d 453 (E.D.N.Y. 2010) ............................................................ 18

*Luckett v. Bure*,
290 F.3d 493 (2d Cir. 2002) .......................................................................... 9

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ..................................................................... 9, 10

*Malik v. Meissner*,
82 F.3d 560 (2d Cir. 1996) ........................................................................... 9

*Manning v. Griffin*,
No. 15-CV-3 (KMK), 2016 WL 1274588 (S.D.N.Y. Mar. 31, 2016) ............................. 21

*Marley v. Ibelli,*
203 F. Supp. 2d 302 (S.D.N.Y. 2001) ............................................................ 16

*Mejia-Mejia v. U.S. Immigration & Customs Enf't, Civil Action No. 18-1445 (PLF)*,
2019 WL 4707150 (D.D.C. Sept. 26, 2019) ..................................................... 20

*Miran v. Solomon*,
No. 1:15-CV-06133-MAT, 2019 WL 5694225 (W.D.N.Y. Nov. 4, 2019) ..................... 13

*Nations Church v. Attorney Gen. U.S.*,
591 F. App'x 161 (3d Cir. 2014) .................................................................... 10

*Norton v. Southern Utah Wilderness Alliance*,
542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) ..................................... 21

*Pearl River Union Free Sch. Dist. v. Duncan*,
56 F. Supp. 3d 339 (S.D.N.Y. 2014) ............................................................. 11

*People v. Rivera*,
129 A.D.3d 476 (1st Dep't 2015) ................................................................. 13

*People v. Rivera*,
No. 1576/04, 2005 WL 7150194 (N.Y. Sup. Ct. Bronx Cty. Nov. 18, 2005) ........ 3, 5, 6, 7

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
757 F.3d 79 (2d Cir. 2014) .......................................................................... 10

*Ramrattan v. Fischer*,
No. 13-Civ.-6890 (KPF), 2015 WL 3604242 (S.D.N.Y. June 9, 2015) ..................... 20

*Ruggiero v. Mobile Crisis Team*,
No. 3:12-cv-00499 (VLB), 2013 WL 8350363 (D. Conn. Aug. 19, 2013) .................. 8, 9

*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988)........................................................................ 7, 8, 9

*Selevan v. N.Y. Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009)........................................................................ 11

*Shipping Fin. Servs. Corp. v. Drakos*,
140 F.3d 129 (2d Cir. 1998)...................................................................... 9

*Shue v. U.S.*,
466 Fed. Appx. 51 (2d Cir. 2012) .............................................................. 18

*Soto v. United States*,
No. 16-cv-6509 (AJN), 2019 WL 3712189 (S.D.N.Y. Aug. 7, 2019)........................... 16

*Thomas v. Ashcroft*,
470 F.3d 491 (2d Cir. 2006)...................................................................... 20

*Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471 (2d Cir. 2006)...................................................................... 8

*Turkmen v. Hasty*,
789 F.3d 218 (2d Cir. 2015)...................................................................... 21

*United States v. Suarez*,
791 F.3d 363 (2d Cir. 2015)...................................................................... 10

*United States v. Vazquez*,
145 F.3d 74 (2d Cir. 1998)........................................................................ 10

*Weise v. Syracuse University*,
522 F.2d 397 (2d Cir. 1975)...................................................................... 18

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017)........................................................................ 18, 19, 20

**Statutes**

5 U.S.C. § 552(a)(4)(B) ........................................................................ 15

5 U.S.C. § 552(a)(6)(C)(i)........................................................................ 15

5 U.S.C. § 702 ........................................................................ *passim*

28 U.S.C. § 1331 ........................................................................ 15

28 U.S.C. § 1332 ................................................................................................ 15

28 U.S.C. § 1367(c)(3) ...................................................................................... 15

42 U.S.C. § 1983 ......................................................................................... *passim*

## **<u>Rules</u>**

Fed. R. Civ. P. 8 .................................................................................................. 1

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 12(b)(1) .................................................................................. 1, 2

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 2, 11

Fed. R. Civ. P. 12(f) ............................................................................................ 7

Fed. R. Civ. P. 12(h)(3) ...................................................................................... 9

## **<u>Regulations</u>**

8 C.F.R. § 204.5 ......................................................................................... 4, 5, 6

8 C.F.R. § 1292.12(a)(1) ............................................................................. 7, 14

Defendants United States Citizenship and Immigration Services ("USCIS"), Thomas Cioppa ("Cioppa"), in his official capacity as New York District Director of USCIS,[1] Department of Justice Office of Legal Access Programs ("OLAP"), and Steven Lang, in his official capacity as Program Director of OLAP (collectively, the "Federal Defendants"), by their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum in support of their motion to dismiss the Second Amended Complaint ("SAC"), ECF No. 39, under Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action concerns a group of government denials of petitions seeking benefits under immigration provisions applicable to immigrant religious workers and their sponsors as well as applications for accreditation for non-lawyers to represent immigrants. In his SAC, Plaintiff Edwin Rivera ("Plaintiff") alleges that USCIS violated his procedural due process rights by denying 34 I-360 petitions, and alleges that OLAP violated those same rights by denying Plaintiff's Form EOIR-31A application for accreditation. In addition, Plaintiff seems to claim that the Federal Defendants should be liable for intentional infliction of emotional distress, negligence and breach of duty, and violations under 42 U.S.C. § 1983 and 5 U.S.C. § 702.

Plaintiff's claims should be dismissed for three reasons. First, the SAC does not include a "short and plain statement of the claim" as required by Fed. R. Civ. P. 8 and fails to give the Federal Defendants notice of the claims against them. Second, Plaintiff lacks Article III standing

---

[1] Contrary to Plaintiff's characterization of Thomas Cioppa as the Director of USCIS, *see* SAC 5, 17, 46, Cioppa was never the Director of USCIS. Cioppa was the New York District Director of USCIS and is now retired. *See* https://www.uscis.gov/about-us/find-uscis-office/field-offices/district-13-new-york-city-district-office. The current Acting Director of USCIS is Kenneth Cuccinelli. *See* https://www.uscis.gov/about-us/leadership/kenneth-t-ken-cuccinelli-ii-acting-director-uscis.

with respect to 15 of the I-360 petitions, as those petitions show no connection either to Plaintiff or to his organization, the Homeward Bound Program ("HBP"), and accordingly his claims related to those petitions should be dismissed under Rule 12(b)(1). Finally, Plaintiff fails to state a claim as required by Rule 12(b)(6), having alleged no facts that would show he is entitled to the grant of either the I-360 petitions or the EOIR-31A application under any cause of action.

The Court should therefore dismiss the Second Amended Complaint.

## BACKGROUND

### A.     Factual and Procedural Background

Plaintiff is the Director of the HBP, an organization located at 1428 Zerega Avenue, Bronx, NY 10462. SAC 5, 16, 18. HBP is alleged to be a religious organization that engages in various forms of charity work and finances that work by selling accounting services. *See id.* 7, 15, 16, 36. In his capacity as HBP Director, Plaintiff alleges he has assisted in the preparation of several immigration-related forms, which USCIS and OLAP have denied for a variety of reasons. *See id.* 4, 7, 20, 24, 25.

On April 8, 2019, Plaintiff filed a complaint against USCIS and the New York State Attorney General's Office ("NYAG") pursuant to the Civil Rights Act of 1964, Equal Employment Opportunity Commission, and Freedom of Information Act. *See* ECF No. 2. On August 5, 2019, after noting that Plaintiff failed to serve the complaint on the Federal Government as required under Rule 4(i)(1), the Federal Defendants filed a pre-motion letter to dismiss the complaint because Title VII did not apply and Plaintiff failed to state a cause of action. *See* ECF No. 22.

On August 8, 2019, Plaintiff filed an amended complaint, which was substantively identical to his prior complaint but re-characterized his original Title VII claims as Fifth Amendment due process claims. *See* ECF No. 24. Following pre-motion letters to dismiss by the Federal

Defendants and the NYAG, on August 15, 2019, this Court held a pre-motion conference.  *See* ECF No. 34.

On October 18, 2019, Plaintiff filed his Second Amended Complaint.  *See* SAC.  Plaintiff's SAC added OLAP as a party.  *Id.*  In addition, Plaintiff further revised his stated causes of action, which are now: intentional infliction of emotional distress, negligence and breach of duty, civil rights violations, violations of 42 U.S.C. § 1983 and 5 U.S.C. § 702, and deprivation of property, liberty, and civil rights.  *Id.*

As pertaining to the Federal Defendants, Plaintiff principally alleges that the immigration petitions (I-360s) and applications (EOIR Form 31-A) he submitted were improperly denied by USCIS and OLAP because of Plaintiff's arrests made by the NYAG.[2]  *See id.* 7, 20, 25-27, 38, 43, 46.  Consequently, Plaintiff demands reversal of all the denials of petitions and applications filed with USCIS and OLAP.  *See id.* 24, 47.

**B.      The Immigration Petitions and Applications at Issue in This Case**

**1.      Special Immigrant Religious Worker Petitions: Form I-360**

A Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant ("I-360") can serve several purposes, depending on the type of petitioner, type of beneficiary, and which sections of the form are filled out.  For each of the forms, the person preparing and signing the form is the

---

[2] The SAC repeatedly references an arrest and court order that Plaintiff views as unjust and void. Plaintiff claims that, as an accountant, he uncovered frauds perpetrated by NYAG Defendant Roberto Lebron in Puerto Rico, Judge Gerald Esposito in the Bronx, and an attorney named Ronald Klar at an unspecified location.  SAC 39-40.  Plaintiff further alleges that, motivated by some animus against Plaintiff, they then conspired with others to alter the outcome of a state-court case against Plaintiff.  *See* SAC at 40.  That case resulted in an order enjoining Plaintiff "from engaging in any of the fraudulent, deceptive or illegal acts and practices alleged."  *People v. Rivera*, No. 1576/04, 2005 WL 7150194, at *1 (N.Y. Sup. Ct. Bronx Cty. Nov. 18, 2005).  Plaintiff was subsequently arrested on several occasions after being held in both civil and criminal contempt for violating that order. *See* ECF No. 34 at 32-33. On July 29, 2008, Plaintiff was also enjoined from offering immigration services of any kind in exchange for payment. *See id.* at 35-36.

"petitioner" and the prospective religious worker or other immigrant is the "beneficiary." In this case, all of the I-360 petitions served as requests that USCIS classify the beneficiary as a "Special Immigrant Religious Worker," as defined by 8 C.F.R. § 204.5(m). To be eligible as a special immigrant religious worker, among other requirements, the alien must:

> (1) For at least the two years immediately preceding the filing of the petition have been a member of a religious denomination that has a bona fide non-profit religious organization in the United States.
> (2) Be coming to the United States to work in a full time (average of at least 35 hours per week) compensated position in one of the following occupations as they are defined in paragraph (m)(5) of this section:
> (i) Solely in the vocation of a minister of that religious denomination;
> (ii) A religious vocation either in a professional or nonprofessional capacity; or
> (iii) A religious occupation either in a professional or nonprofessional capacity.
> (3) Be coming to work for a bona fide non-profit religious organization in the United States, or a bona fide organization which is affiliated with the religious denomination in the United States.
> (4) Have been working in one of the positions described in paragraph (m)(2) of this section, either abroad or in lawful immigration status in the United States, and after the age of 14 years continuously for at least the two-year period immediately preceding the filing of the petition. The prior religious work need not correspond precisely to the type of work to be performed. A break in the continuity of the work during the preceding two years will not affect eligibility so long as:
> (i) The alien was still employed as a religious worker;
> (ii) The break did not exceed two years; and
> (iii) The nature of the break was for further religious training or for sabbatical that did not involve unauthorized work in the United States. However, the alien must have been a member of the petitioner's denomination throughout the two years of qualifying employment.

8 C.F.R. § 204.5(m). While the SAC only directly references the I-360s filed on behalf of Juan Tejada Collado, Gladys Consuegra de Collado, and Ramona Urena, *see* SAC 11, 19, 20, the Federal Defendants assume that the I-360 petitions at issue are the same 34 petitions and corresponding beneficiaries listed in the previous Amended Complaint. *See* Amended Complaint ECF No. 24, at 4–6. These 34 petitions are currently at various stages of the administrative process: two are pending accompanied by notices of intent to deny, three have been denied and are pending an administrative appeal which the petitioner filed, 26 have been denied without an

appeal, and 3 have been denied and had their appeal dismissed. The signatories to the forms also vary. In 19 forms, Plaintiff signed as a Prospective Employer and/or as a representative of the attesting religious organization. *See* Exhibit A. Yet, in 15 forms,[3] only the signature of pastor Francisco Bido, of Christian Ministries of Family Integration, Inc. appears, and Plaintiff's name does not appear at all. *See id.*

While Plaintiff claims that the denials were purely a result of his previous arrests and court orders, the denials themselves show that the petitions simply had not met the statutory and regulatory requirements for classification as a Special Immigrant Religious Worker. For example, the Notice of Intent to Deny ("NOID") sent to Juan Tejada Collado shows that the agency gave several reasons for the denial. *See* SAC Ex. 8. First, the NOID explained that Plaintiff had failed to carry his burden of demonstrating that the position described qualified as a religious occupation under 8 C.F.R. § 204.5(m)(5). *See* SAC Ex. 8. Second, the NOID stated that Plaintiff had failed to show that Collado possessed the two-year qualifying work experience required by 8 C.F.R. § 204.5. *See* SAC Ex. 8. Only the third reason given, the lack of a satisfactory Compliance Review inspection as required by 8 C.F.R. § 204.5, mentioned the October 2005 court order as damaging to the credibility of Plaintiff. *See id.* However, the actual denial sent to Juan Tejada Collado explains that USCIS denied the petition under 8 C.F.R. § 204.5 because the beneficiary lacked the two-year qualifying work experience, the petition lacked evidence of how the petitioner intended to compensate the beneficiary, the beneficiary had not been solely working as a religious worker for the two years immediately preceding the filing of the petition, and the petition failed to supply

---

[3] Plaintiff incorrectly claimed at the August 15, 2019 pre-motion conference that he co-signed 27 of 34 petitions with Francisco Bido and signed 7 of them by himself. *See* ECF No. 34 at 27: 5-14. Only 19 of the I-360 petitions are associated with Plaintiff, whereas 15 of the petitions have no association with him. *See* Exhibit A; *see infra* 9-10.

sufficient evidence to establish that the beneficiary would work as a religious worker if the petition was approved. *See* Exhibit B. The denial references the Compliance Review inspection as part of the history of the petition, but that consideration did not form part of the basis for the denial of the petition as stated above. *See id.* Similarly, the denial of Ramona Urena's appeal concluded that Plaintiff had failed to demonstrate that Urena had established the required two-years of religious work experience prior to filing her petition and that her intended job position of assistant director qualified as a religious occupation. *See* SAC Ex. 18 (ECF No. 39-2). That denial included no reference to any judgments against Plaintiff or any of Plaintiff's arrests. *See id.* These denials and NOIDs explain that the petitions failed to demonstrate that the beneficiary had the required two-years of religious worker experience as required by 8 C.F.R. 204.5.[4] *See, e.g.*, Exhibit C.

### 2. Request by Organization for Accreditation: Form EOIR 31-A

A Form EOIR-31A is required for organizations to request new accreditation or renewal of accreditation for a non-attorney representative to provide immigration legal services on behalf of the organization's clients before the EOIR (i.e., the Immigration Courts and the Board of Immigration Appeals) and/or the Department of Homeland Security.

In addition to filing 19 I-360s, Plaintiff filed Form EOIR 31-A on behalf of HBP on or about October 13, 2017. *See* SAC Ex. 9. This form requested accreditation as a provider of non-attorney immigration legal services for the HBP and for Plaintiff as the organization's sole representative. *See* SAC Ex. 9. The application was disapproved by OLAP on December 15,

---

[4] The Federal Defendants have all of the underlying denials and/or NOIDs as shown in Exhibit A, but believed it would be most efficient to summarize those denials and/or NOIDs instead of attaching them here. Granted that the Juan Tejada Collado denial references Plaintiff's October 2005 court order in the history of the petition, *see* Exhibit B, most of the USCIS denials lack any reference whatsoever to Plaintiff's October 2005 court order or arrests. *See, e.g.*, Exhibit C. If the Court wishes to see all of the denials and/or NOIDs, the Federal Defendants can provide those at the Court's request.

2017.  *Id.*  The reason given for the disapproval was that the organization lacked an individual qualified to be an accredited representative.  *Id.*  Applications for accreditation must include proof that an individual "has the character and fitness to represent clients" before certain authorities.  8 C.F.R. § 1292.12(a)(1).  OLAP's disapproval letter cited Plaintiff's "history of prosecution for fraud and theft," including the arrest and jail time in October 2016, in finding that HBP did not meet the requirements for accreditation.  *See* SAC Ex. 9.

## ARGUMENT

### A.     The SAC Should Be Dismissed for Failure to Comply with Rule 8

The SAC fails to satisfy Rule 8 of the Federal Rules of Civil Procedure, which requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 is to ensure that the defendant has "fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and quotation marks omitted).  "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (alteration and internal quotation marks omitted).  "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Id.*  "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, *see* Fed. R. Civ. P. 12(f), or to dismiss the complaint."  *Id.*

The Court should dismiss the SAC because it is "confused, ambiguous, vague, or otherwise unintelligible," and thus fails to give the Federal Defendants adequate notice of what the claims

are, which decision or decisions are being challenged here, and the basis for such challenges. *See id.* While "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), there are limits and courts often dismiss *pro se* complaints for failure to comply with Rule 8(a)(2). *See, e.g., Da Costa v. Marcucilli*, 675 Fed. App'x 15, 17 (2d Cir. 2017) (affirming dismissal of a *pro se* complaint because it was convoluted and repetitive); *Djangmah v. Magafara*, No. 16-CV-6136 (VSB), 2018 WL 4080346, at *3 (S.D.N.Y. Aug. 26, 2018) (dismissing a *pro se* complaint "because it is so confusing, ambiguous, and incomprehensible that it does not place Defendants on fair notice of Plaintiff's claims"); *Ruggiero v. Mobile Crisis Team*, No. 3:12-cv-00499 (VLB), 2013 WL 8350363, at *3 (D. Conn. Aug. 19, 2013) (dismissing a *pro se* complaint because it was "difficult to comprehend, seemingly delusional at times (and thus frivolous), littered with unexplained and disjointed allegations devoid of supporting facts and spanning several decades, and conclusory overall").

The SAC fails to put defendants on notice of which claim is directed against which defendant. For example, while the SAC lists intentional infliction of emotional distress as a cause of action, it does not address whether that emotional distress was caused: by the allegedly improper denial of the I-360 petitions, which would make USCIS the proper defendant; by the allegedly improper denial of Form EOIR-31A, which would make OLAP the proper defendant; and/or by the alleged false allegations made by Defendant Lebron, which would make Defendant Lebron and the NYAG as the appropriate defendants. *See* SAC 21-25. Likewise, while the SAC lists negligence and breach of duty as a cause of action, it does not address whether that negligence is asserted against USCIS, OLAP, and/or the NYAG. *See* SAC 25-38. In particular, with respect to USCIS, it is unclear whether Plaintiff alleges that USCIS was negligent in its submitting of a report

to OLAP concerning the EOIR-31A, its failure to suspend the provisions of the New York City Department of Consumer Affairs ("DCA") law, and/or its request for information concerning the petitions. *See id.* In addition, the SAC lists a violation of 42 U.S.C. § 1983 (which applies to state and not federal action) as a cause of action, but it does not address whether that violation is asserted against USCIS, Cioppa, OLAP, Steven Lang, Roberto Lebron, and/or the NYAG. *See* SAC 43-48. Furthermore, the SAC lists a violation of 5 U.S.C. § 702 as a cause of action, but does not sufficiently explain the basis for such a challenge. *Id.* 46-48. Therefore, the SAC should be dismissed for failure to comply with Rule 8.[5]

**B.      The SAC Should be Dismissed Under Rule 12(b)(1) with Respect to 15 Petitions Filed by Francisco Bido**

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [Court] lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))*; see Empire Trust Co. v. United States*, 324 F.2d 507 (2d Cir. 1963) (per curiam); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs carry the burden of establishing that subject-matter jurisdiction exists over their complaint. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

On a motion to dismiss for lack of subject-matter jurisdiction, a court assumes as true the factual allegations set forth in the complaint. *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The Court, however, may refer to evidence extrinsic to the pleadings.

---

[5] If the SAC is dismissed solely on this basis (which it should not be given the deficiencies described *infra*), the Federal Defendants would not object to allowing Plaintiff an opportunity to cure these drafting deficiencies in a further amended complaint.

*See Makarova,* 201 F.3d at 113*; Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Consideration of extrinsic evidence does not convert the motion to one for summary judgment pursuant to Rule 56. *See United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir. 1998).

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limits on its exercise." *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004)) (internal quotation marks omitted), cert. denied, 136 S. Ct. 800 (2016). "The plaintiff bears the burden of establishing such standing." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014). In the context of I-360 applications for religious worker visas, petitioners have standing to bring claims. *See Khalid v. DHS, USA*, 1 F. Supp. 3d 560, 567-69 (S.D. Tex. 2014); *Islamic & Educ. Ctr. Ezan of Greater Des Moines v. Napolitano*, 826 F. Supp. 2d 1122, 1125 (S.D. Iowa 2011); *Embassy of the Blessed Kingdom of God for all Nations Church v. Attorney Gen. U.S.*, 591 F. App'x 161, 165 (3d Cir. 2014).

The SAC is subject to dismissal for lack of subject matter jurisdiction because Plaintiff lacks standing as a petitioner with respect to the 15 I-360 petitions he seemingly references in his SAC. In his SAC, Plaintiff only alleges that HBP is an accountant of Francisco Bido's The Christian Ministry of Family Integration. *See* SAC at 7. Furthermore, Plaintiff's name or organization do not appear in the 15 petitions signed by pastor Francisco Bido. *See* Exhibit A. Finally, despite his alleged connection to Francisco Bido, *see* ECF No. 34 at 6: 5-10; 27: 5-14, Francisco Bido had sent an email on June 12, 2019, to USCIS informing USCIS that Plaintiff "pretended to be an immigration lawyer, which he is not and he had been previously arrested for the same situation, charging each of them $8,000 dollars of which [Bido's immigrant beneficiaries]

have paid $5,000 each. . . He wants to continue deceiving these people using my ministry. What can I do?" *See* Exhibit D.[6] As a result, the Court should dismiss Plaintiff's claims with respect to these 15 petitions.

## C. The SAC Fails to State a Claim and Should Be Dismissed Under Rule 12(b)(6)

Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) should be granted when the complaint fails to allege all the required elements of a cause of action. *See Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014)*; In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014) (granting a motion to dismiss under Rule 12(b)(6) where the defendant argued that the complaint "fail[ed] to adequately allege the key elements of a . . . cause of action"). A court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678-79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor must a court accept as true "legal conclusions" or "'a legal conclusion couched as a factual allegation.'" *Id.* Allegations in a complaint that are contradicted by either more

---

[6] This exhibit is appropriate to include on a motion to dismiss because the relationship between Francisco Bido and Plaintiff is integral to Plaintiff's SAC concerning the petitions denied by USCIS. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("'the complaint is deemed to include . . . documents incorporated in it by reference' . . . [and] [e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint").

specific allegations or documentary evidence are not entitled to a presumption of truthfulness. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Jacobs v. Verizon Comm'ns, Inc.*, No. 16 Civ. 1082 (PGG), 2017 WL 8809714, at *4 (S.D.N.Y. Sept. 28, 2017) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). "Among the matters of which courts may take judicial notice are decisions of an administrative agency." *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16 Civ. 3138 (KMK), 2018 WL 4757965, at *2 n.2. (S.D.N.Y. Sept. 30, 2018) (quoting *Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F. Supp. 2d 192, 197 (D. Conn. 2006)); *see also Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012) ("Agency determinations and administrative findings are public records of which a court may properly take judicial notice.").

### 1. The SAC Fails to State a Claim of Wrongful Denial of Forms I-360 and EOIR 31-A[7]

Throughout all of his causes of action against the Federal Defendants, the primary relief Plaintiff is seeking appears to be the reversal of USCIS' denials of the 34 I-360s and OLAP's denial of the EOIR-31A—yet Plaintiff fails to state a claim upon which relief may be granted. *See* SAC 24, 47. His chief argument appears to be that his previous entanglements with the judicial system consist solely of illegitimate arrests and void judgments, that the denials of the I-360s and EOIR-31A relied upon those entanglements, and that the denials are therefore illegitimate as well.

---

[7] Federal Defendants here do not explain how Plaintiff fails to state a claim for his civil rights violations cause of action, *see* SAC 38-43, and for his deprivation of property, liberty, and civil rights cause of action, *see* SAC 48-51, as those claims appear directed exclusively at the NYAG.

*See id.* 7, 20, 25-27, 38, 43, 46.  This appears to be the core of the case, although Plaintiff references several different legal standards in doing so.  *See infra*. at 14-21.

As an initial matter, both USCIS and OLAP were well within their rights to rely on the valid judgments entered against Plaintiff, as well as his criminal record.  Plaintiff has repeatedly attempted to relitigate the 2005 state-court order entered against him. *See People v. Rivera*, 129 A.D.3d 476, 477 (1st Dep't 2015) ("[T]his appeal is an improper attempt to relitigate the May 2005 order, and the time to seek reargument of that order has long since passed.").  It is improper for Plaintiff to attempt to attack the judgment rendered against him in state court in this Court. *See Miran v. Solomon*, No. 1:15-CV-06133-MAT, 2019 WL 5694225, at *3 (W.D.N.Y. Nov. 4, 2019) (collecting cases holding that Rule 60(b)(4) does not permit a federal district court to render the judgment of a state court void).  In fact, this Court asked Plaintiff why it was "a due process violation for the federal government to rely on what they may believe to be completed proceedings." *See* ECF No. 34 at 17:8-10.  The Court subsequently asked Plaintiff why he believed there was a "due process violation caused by [OLAP's] decision not to give [Plaintiff], a convicted felon, the accreditation? Is there something wrong with the conviction? I don't believe -- I don't know that there is." *Id.* at 39:25-40:3.  Plaintiff has presented no reasons why OLAP and USCIS would not be permitted to consider, or even rely on, facially valid state proceedings in making their determinations.

Further, OLAP is entitled to disapprove of applicants who have criminal records.  Indeed courts have dismissed *pro se* complaints that challenge OLAP's accreditation procedure when the application has been denied because the applicant has a felony conviction. *See Davila v. Gutierrez*, 330 F. Supp. 3d 925, 942 (S.D.N.Y. 2018) ("Because the plain language of the applicable regulation . . . allows OLAP to terminate a person who has been convicted of a felony, and OLAP

terminated [plaintiff] because he was convicted of a felony . . . the Court concludes that OLAP examined the relevant data and articulated a satisfactory explanation for its action"); *Davila v. Lang*, 343 F. Supp. 3d 254, 277 (S.D.N.Y. 2018) (same).  Similarly, in its disapproval of Plaintiff's EOIR-31A application, OLAP explained that all "applications for accreditation must include proof that an individual 'has the character and fitness to represent clients before the Immigration Courts and the Board, or DHS, or before all three authorities'" SAC Ex. 9 (citing 8 C.F.R. § 1292.12(a)(1)).  "An applicant's character and fitness is evaluated by 'an examination of factors such as: Criminal background; prior acts involving dishonesty, fraud, deceit, or misrepresentation; past history of neglecting professional, financial, or legal obligations." *Id.*  In denying Plaintiff's application, OLAP explained that he was "a person of concern due to his history of prosecution for fraud and theft," and observed, "Records show that as recently as October 2016, Mr. Rivera was arrested and ordered to serve jail time for violating a court order to pay restitution to the victims of his fraudulent practices and for continuing to provide immigration legal services despite a court order banning him from providing such services." *Id.*  Furthermore, Plaintiff has already admitted to this Court that he has also been convicted of a federal immigration offense unrelated to the forms and arrests described in the complaint.  ECF No. 34 at 38: 22-24.  Meanwhile, USCIS articulated reasons on the merits for the denials of the I-360s that were completely unrelated to Plaintiff's arrests and judgments.  *See supra* 5-6.  Thus, Plaintiff fails to state a claim upon which relief can be granted because (1) OLAP's denials were based on legally proper grounds supported by incontestable prior court findings, arrests, and judgments against Plaintiff, and (2) USCIS's denial of the I-360 petitions were not based on those prior court findings, arrests, and judgments.

### 2. The SAC Fails to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff purports to state a cause of action for intentional infliction of emotional distress, although the exact conduct at issue, the defendants it is alleged against, and the dates on which it allegedly occurred are unclear.[8]  Furthermore, intentional infliction of emotional distress is a state common law tort claim, and Plaintiff has not stated any applicable statutory basis for this Court's jurisdiction over such a claim.  Rather, in support of subject matter jurisdiction, Plaintiff invokes 5 U.S.C. § 552(a)(4)(B), which authorizes a district court to order the production of improperly withheld records from an agency to a complainant, and 5 U.S.C. § 552(a)(6)(C)(i), which deals with exhaustion of administrative remedies in the context of a request to an agency for records.  *See* SAC 5.  While Plaintiff does invoke federal question jurisdiction under 28 U.S.C. § 1331, there is no invocation of diversity jurisdiction under 28 U.S.C. § 1332, nor does Plaintiff plead any facts to support the finding of diversity jurisdiction.  Indeed, Plaintiff lists his address in the Bronx.  *See id.*  Given that, all of Plaintiff's claims should be dismissed for the reasons contained here and in the NYAG's Motion to Dismiss, the Court should dismiss Plaintiff's state law tort claim for lack of subject matter jurisdiction.  *See Cain v. Mandl Coll. of Allied Health*, No. 14 Civ. 1729 (ER), 2017 WL 2709743, at *5 (S.D.N.Y. June 22, 2017) ("Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which is could have exercised supplemental jurisdiction.").

---

[8] Under New York law, the one-year statute of limitations for intentional infliction of emotional distress begins to run on the date of the injury. *Bellissimo v. Mitchell*, 122 A.D.3d 560, 561 (2d Dep't 2014). To the extent that Plaintiff asserts claims based on injuries more than one year old, the Court should dismiss those claims as time-barred.

But even if there were subject matter jurisdiction, Plaintiff has not sufficiently pleaded the elements of a cause of action for intentional infliction of emotional distress. Under New York law, there are four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). When the New York Court of Appeals has considered intentional infliction of emotional distress cases, the claim has failed "because the alleged conduct was not sufficiently outrageous." *Id.*; *see also Marley v. Ibelli¸* 203 F. Supp. 2d 302, 311 (S.D.N.Y. 2001). The actions deemed insufficiently outrageous include "publish[ing] a picture of a person in a psychiatric facility" and "display[ing] recognizable images of rape victims after repeatedly assuring them they would not be identifiable." *Chanko v. Am. Broad. Co. Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016). As stated before, the denial of accreditation to HBP and the denial of Special Immigrant Religious Worker status to the I-360 beneficiaries were reasonable and permitted under the law. Yet even if those agency actions were wrongful, they fall far short of the conduct deemed insufficiently outrageous by the New York Court of Appeals.

### 3. The SAC Fails to State a Claim for Negligence and Breach of Duty

Plaintiff also claims to have a cause of action for negligence and breach of duty, although again the SAC leaves unclear the exact conduct at issue, the defendants it is alleged against, and the dates on which it allegedly occurred. First, the Court should dismiss Plaintiff's state-law tort claim for lack of subject matter jurisdiction. *See supra* 15 (citing *Cain*, 2017 WL 2709743, at *5).

Second, even if there were subject matter jurisdiction, Plaintiff has not sufficiently pleaded the elements of a cause of action for negligence. To establish negligence under New York law, a plaintiff must show "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *See Soto v. United States*, No. 16-cv-

6509 (AJN), 2019 WL 3712189, at *5 (S.D.N.Y. Aug. 7, 2019) (citing *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013)).  Plaintiff argues that USCIS breached a duty to him by failing to investigate before submitting a report to OLAP for a recommendation for the approval of EOIR-31 and EOIR 31-A, because Plaintiff asserts that the report contained false allegations and void court orders.  *See* SAC 25-28.  As stated above, Plaintiff may still wish to challenge his October 2016 arrest and court orders as wrongful in this forum, but (as both the SAC itself and judicial notice make clear) those arrests and court orders actually exist.  Therefore, Plaintiff does not plausibly allege facts sufficient to support any possible claim that USCIS failed to investigate and thereby breached its duty.  Rather, USCIS and OLAP were entitled as a matter of law to use this information concerning the EOIR-31-A.  *See supra* 5-6, 12-14.  Nor does the SAC allege facts supporting any plausible inference that this alleged failure to investigate caused the alleged damages, *i.e.* the closure of Plaintiff's office.  *See* SAC 29.  Furthermore, Plaintiff accuses USCIS of negligence for failure to suspend the provisions of the New York City DCA which seemingly affected immigration form preparers in the Bronx and somehow damaged Plaintiff.  *See* SAC 31-32.  But there is no negligence cause of action known to the Federal Defendants for failure to cause the repeal of a new city law or to cause the City to apply it differently; nor does the SAC plausibly allege facts showing that the law or USCIS's lack of intervention with the City directly or proximately caused the closure of his office.  Finally, under the negligence cause of action, Plaintiff objects that USCIS posed questions that were "unmannerly" and "forc[ing] methods used in other religions upon the Plaintiff" by requesting information from Plaintiff about the submitted I-360 petitions.  *See* SAC 33-36.  But these allegations are conclusory and do not even attempt to explain how such an allegation constitutes negligence; as such, they fail to state a claim.

### 4. The SAC Fails to State a Claim for Violation of 42 U.S.C. § 1983

Plaintiff also fails to state a claim against any federal defendant under 42 U.S.C. § 1983. *See* SAC 43-48. First, § 1983 only applies to constitutional violations committed by state actors, not federal actors. *See Grant v. U.S.*, No. 17 Civ. 2172 (PGG), 2018 WL 3574865, at *3 (S.D.N.Y. July 25, 2018); *see also Lubrano v. United States*, 751 F. Supp. 2d 453, 455 (E.D.N.Y. 2010) ("Based on the statute's reference to state actors, it is well-settled that Section 1983 does not provide an avenue to assert causes of action against the federal government or its agents. *See*, *e.g.*, *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975) ('§ 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), have no applicability to federal action.'").

Courts sometimes construe § 1983 claims against federal officials as claims pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). *See, e.g.*, *Shue v. U.S.*, 466 Fed. Appx. 51, 51 (2d Cir. 2012) ("[Plaintiff]'s constitutional claims against federal officials are properly analyzed as claims pursuant to *Bivens* . . . rather than 42 U.S.C. § 1983). Here, however, Plaintiff's claims are insufficient to state a *Bivens* claims for numerous reasons. First, the SAC fails to satisfy the strict limits on *Bivens* claims that the Supreme Court recently reinforced in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). In *Abbasi*, the Supreme Court firmly instructed that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857. The Court further directed that courts should conduct a two-part inquiry to determine whether a *Bivens* remedy is available in a given case. First, courts should ascertain whether the "case presents a new *Bivens* context." *Id*. at 1859. The considerations in the determination of whether a context is "new" include differences in:

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of

potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1860 (internal quotation and citation omitted). "[T]he new-context inquiry is easily satisfied" by even "small" differences between the claim at issue and the Supreme Court's previously approved *Bivens* claims. *Id*. at 1865. Indeed, in *Abbasi*, the Supreme Court described the three *Bivens* claims the Court has approved in the past with a high degree of specificity: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Id*. at 1860 (discussing *Bivens*, 403 U.S. 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980)).

If the case presents a new context, courts move to the second step of the test and ask whether "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. at 1857 (quoting *Carlson*, 446 U.S. at 18). If there are, "a *Bivens* remedy will not be available." *Id*. The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. at 1858. Additionally, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id*. at 1865.

Here, at the first step of the *Abbasi* evaluation, Plaintiff's alleged constitutional claim presents a new context. Plaintiff appears to allege that USCIS, Cioppa, and OLAP violated his rights by denying the I-360 petitions on the basis of Plaintiff's arrests. *See* SAC 43, 46. This allegation is far different from the three approved *Bivens* claims—those brought in *Bivens*, *Davis*, and *Carlson*—and therefore, Plaintiff's claim presents a new context.

At the second step of the *Abbasi* evaluation, the special factors analysis counsels against judicial extension of a *Bivens* remedy to this case. The Supreme Court has emphasized that "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863. Given Plaintiff's simultaneous assertion of different theories supporting similar claims elsewhere in the SAC against the relevant agencies and government officials, and other potential remedies including claims for malicious prosecution or other torts, "there are alternative mechanisms available to challenge the constitutionality of the kind of government action at issue here." *Mejia-Mejia v. U.S. Immigration & Customs Enf't*, Civil Action No. 18-1445 (PLF), 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019). Accordingly, the Court should decline to extend *Bivens* to this context.

Moreover, the SAC does not plead facts that allege or support a plausible inference of any Federal Defendant's personal involvement in any alleged violation of his rights. Plaintiff does not explain which person at USCIS, if any, has deprived him and/or his beneficiaries of their rights. Rather, Plaintiff asserts that he is challenging USCIS's denial of the petitions and applications, but then focuses on conduct by the NYAG. *See* SAC 43-46. To the extent Plaintiff asserts that Cioppa, the retired District Director of the USCIS New York City Field Office, should be liable under § 1983 or *Bivens*, Plaintiff has failed to plead facts supporting Cioppa's personal involvement in any alleged violation of his rights. The doctrines of vicarious liability and *respondeat superior* are inapplicable to *Bivens* suits; rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Thomas v. Ashcroft*, 470 F.3d 491, 496-97 (2d Cir. 2006). While Plaintiff's complaint must be construed liberally because he is a *pro se*, he still bears the burden to plead the personal involvement of every individual defendant. *Ramrattan v. Fischer*, No. 13-Civ.-6890

(KPF), 2015 WL 3604242, at *10 (S.D.N.Y. June 9, 2015). Further, supervisors are liable under *Bivens* "only if, through their own actions, they satisfy each element of the underlying constitutional tort." *Manning v. Griffin*, No. 15-CV-3 (KMK), 2016 WL 1274588, at *12 (S.D.N.Y. Mar. 31, 2016) (citing *Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015)). Accordingly, a supervisor's failure to properly supervise subordinates alone cannot establish *Bivens* liability.[9] Therefore, Plaintiff fails to state a claim under 42 U.S.C. § 1983 even if that claim is construed as arising under *Bivens*.

### 5. The SAC Fails to State a Claim for Violation of 5 U.S.C. § 702

Finally, Plaintiff has failed to state a claim under 5 U.S.C. § 702. See SAC 46-48. Under the Administrative Procedures Act ("APA"), a plaintiff "suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute," 5 U.S.C. § 702, may sue to compel that agency to act "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *George v. Gutierrez*, No. 1:04cv3901-ENV-LB, 2007 WL 1029002, at *6 (E.D.N.Y. Mar. 28, 2007), *aff'd sub nom. George v. Evans*, 311 F. App'x 426 (2d Cir. 2009) (citing *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (emphasis in original). The SAC fails to identify any action that USCIS was required to take, and so fails to state a claim pursuant to § 702. Instead, Plaintiff argues that by denying the I-360 petitions because of the October 2016 arrest, Cioppa and OLAP "erroneously deprived" Plaintiff and members of HBP "of the acquisition of permanent residence and has unconstitutionally discriminated against Plaintiffs

---

[9] To the extent Plaintiff seeks to sue Thomas Cioppa or Steven Lang in their official capacities, these claims "must be dismissed based on sovereign immunity. It is well established that the United States, as sovereign, is immune from suit save as it consents to be sued." *Culbertson v. Cameron*, No. 08-CV-4838 (SLT) (LC), 2010 WL 1269777, at *3 (E.D.N.Y. Mar. 30, 2010).

based on AAG's false charges and the void contempt arrest on October 2016." SAC 46. He argues that "Defendants' denials should be reversed, because the USCIS did not provide a cause of action, only a form of relief, and because Cioppa's factual allegations do not establish a plausible equal protection or due process protections." SAC 47. These contentions are difficult to parse but, at any rate, undermined by the USCIS's decisions, which, as described above, were made on grounds unrelated to Plaintiff's past judicial entanglements. *See supra* 5-6. Because USCIS and OLAP's decisions were based on reasons that are entirely consistent with law, *see supra* 12-14, Plaintiff fails to state an APA claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action.

Dated:  New York, New York
         January 6, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York,
Attorney for the Federal Defendants

By:    /s/ *Joshua E. Kahane*
JOSHUA E. KAHANE
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel.    (212) 637-2699
Fax     (212) 637-2786
joshua.kahane@usdoj.gov