UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Edwin Rivera,                                    :
                                                 :
                                Plaintiff, :       19 CV 3101 (KPF)(JN)
                                                 :
                 - against -                     :   **ORIGINAL FILED BY ECF**
                                                 :
United States Citizenship and Immigration        :
Service, Thomas Cioppa, Director (USCIS)         :
                                                 :
Department of Justice, Office of Legal Access    :
Programs, Steven Lang, Program Director          :
(OLAP)                                           :
                                                 :
New York State Attorney General,                 :
Roberto Lebron (AAG),                            :
                                                 :
                                Defendants. :
-------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# STATE DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
<u>Attorney for State Defendants</u>
28 Liberty Street - 17th Floor
New York, New York 10005
Tel.: (212) 416-8476
david.diamond@ag.ny.gov


DAVID B. DIAMOND
Assistant Attorney General
     <u>of</u> <u>Counsel</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................iii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS ......................................................................................................1

1.  Plaintiff's Alleged Directorship of Homeward Bound Program for Children, Inc............. 1

2.  Plaintiff's Alleged Submission of Applications and Petitions to Co-Defendant
    United States Customs and Immigration Service ................................................................ 2

3.  State Defendants' Alleged Involvement in the Denial of the Petitions and
    Applications Plaintiff Submitted to USCIS ....................................................................... 3

4.  The OAG's Prosecution of Plaintiff in People v. Rivera, 1576/2004
    (Sup. Ct. Bronx Cty) ......................................................................................................... 3

    a.  The May 6, 2005 Decision and Order ........................................................................ 4
    b.  The November 18, 2005 Judgment and Order............................................................ 5
    c.  The Decision and Orders Holding Plaintiff in Civil or Criminal Contempt ................. 6
    d.  The Warrants of Commitment Issued for Plaintiff's Arrest ........................................ 6

5.  Plaintiff's Motions to Dismiss the State Court Action ...................................................... 7

6.  Plaintiff's Court of Claims Action Alleging False Arrest and the Dismissal
    Thereof............................................................................................................................. 7

7.  The Denials by USCIS and OLAP of the Applications and Petitions Plaintiff
    Submitted .......................................................................................................................... 8

    a.  USCIS's Denial of the Form EOIR-31 and EOIR-31A Applications............................ 8
    b.  USCIS's Denial of the Three HBP Members' Form I-360 Petitions............................. 8

8.  Plaintiff's Factual Allegations Concerning State Defendants' Unlawful
    Conduct ............................................................................................................................ 9

9.  Plaintiff's Claims and the Relief He Seeks...................................................................... 10

Standards of Review ............................................................................................................ 12

    A.  Fed. R. Civ. P. 12(b)(1)............................................................................................ 12
    B.  Fed. R. Civ. P. 12(b)(6)............................................................................................ 12

ARGUMENT ............................................................................................................ 13

POINT I       ALL OF PLAINTIFF'S CLAIMS AGAINST THE OAG, AND HIS
                 DAMAGES CLAIMS AGAINST AAG LEBRON IN HIS OFFICIAL
                 CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT ............... 13

POINT II      PLAINTIFF'S STATE LAW CLAIMS FOR PROSPECTIVE
                 INJUNCTIVE RELIEF AGAINST AAG LEBRON ARE BARRED
                 BY THE ELEVENTH AMENDMENT ............................................................ 14

POINT III     PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN
                 DOCTRINE ....................................................................................................... 15

POINT IV     PLAINTIFF'S CLAIMS ARE BARRED BY CLAIM PRECLUSION .............. 17

POINT V      PLAINTIFF'S DAMAGES CLAIMS AGAINST AAG LEBRON ARE
                 BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY ......................... 20

POINT VI     PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE STATE
                 DEFENDANTS ................................................................................................. 22

                 A.   Intentional Infliction of Emotional Distress ..................................... 22
                 B.   Malicious Prosecution ....................................................................... 23
                 C.   Denial of Due Process Notice ........................................................... 23
                 D.   Abuse of Process ............................................................................... 24
                 E.   Defamation ........................................................................................ 24

POINT VII    SOME OR ALL OF PLAINTIFF'S CLAIMS ARE BARRED
                 BY THE APPLICABLE STATUTES OF LIMITATIONS ................................ 25

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..................................................................................12

Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs,
    398 U.S. 281 (1970)..................................................................................15

Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,
    968 F.2d 196 (2d Cir. 1992).....................................................................12

Becker v. Cephalon, Inc.,
    2015 WL 5472311 (S.D.N.Y. Sept. 15, 2015).........................................24

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................12

Bernard v. Cty. of Suffolk,
    356 F.3d 495 (2d Cir. 2004)................................................................20, 21

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002).......................................................................2

D.C. Court of Appeals v. Feldman,
    460 U.S. 462 (1983)..................................................................................15

Doe v. City of Bridgeport,
    2006 WL 905361 (D. Conn. Apr. 5, 2006)..............................................22

Dube v. State Univ. of New York,
    900 F.2d 587 (2d Cir. 1990).....................................................................14

Dusenbery v. United States,
    534 U.S. 161 (2002)..................................................................................21

Ex parte Young,
    209 U.S. 123 (1908)..................................................................................14

Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,
    544 U.S. 280 (2005)..............................................................................15, 16

Folk v. City of New York,
    243 F. Supp. 3d 363 (E.D.N.Y. 2017) ....................................................24

Grullon v. City of New Haven,
    720 F.3d 133 (2d Cir. 2013).................................................................3

Hoblock v. Albany Cty. Bd. of Elecs.,
    422 F.3d 77 (2d Cir. 2005)....................................................15, 16, 17

Hogan v. Fischer,
    738 F.3d 509 (2d Cir. 2013)..............................................................12

In re NYSE Specialists Sec. Litig.,
    503 F.3d 89 (2d Cir. 2007).................................................................21

Jones v. City of New York,
    988 F. Supp. 2d 305 (E.D.N.Y. 2013) ...............................................22

Kirkendall v. Halliburton, Inc.,
    707 F.3d 173 (2d Cir. 2013)...............................................................24

Krepps v. Reiner,
    377 Fed. App'x 65 (2d Cir. 2010).......................................................19

Liberty Synergistics, Inc. v. Microflo Ltd.,
    50 F. Supp. 3d 267 (E.D.N.Y. 2014) .................................................23

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000)...............................................................12

Mangiafico v. Blumenthal,
    471 F.3d 391 (2d Cir. 2006)...............................................................20

Mary Jo C. v. N.Y. State & L. Ret. Sys.,
    707 F.3d 144 (2d Cir. 2013)...............................................................13

McKithen v. Brown,
    481 F.3d 89 (2d Cir. 2007).................................................................18

Morgan v. NYS Att'y Gen'l's Office,
    2013 WL 491525 (S.D.N.Y. Feb. 8, 2013)....................................13, 14

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950)............................................................................23

Pelosi v. Spota,
    607 F. Supp. 2d 366 (E.D.N.Y. 2009) .................................................4

Pennhurst State Sch. & Hosp. v. Halderman,
    465 U.S. 89 (1984)..............................................................................14

Quern v. Jordan,
    440 U.S. 332 (1979)..............................................................................................13

People v. Rivera,
    1576/2004 (Sup. Ct. Bronx Cty.) ................................................................. passim

People v. Rivera,
    2013 WL 6822885 (Sup. Ct. Bronx Cty. Mar. 1, 2013) ......................................7, 17

People v. Rivera,
    2013 WL 6832083 (Sup. Ct. Bronx Cty. Aug. 27, 2013), aff'd, 129 A.D.3d
    476 (1st Dep't 2015) ........................................................................................7, 17

Rivera v. State of New York,
    Claim No. 129436 (N.Y. Ct. Cl.), Decision dated Sept. 6, 2017)........................ 7-8

Robinson v. Cusack,
    2007 WL 2028112 (E.D.N.Y. July 11, 2007) ........................................................19

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923)..............................................................................................15

Salmon v. Blesser,
    802 F.3d 249 (2d Cir. 2015)...................................................................................22

Sank v. City Univ. of New York,
    2011 WL 5120668 (S.D.N.Y. Oct. 28, 2011) ........................................................14

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003).....................................................................................24

Sherman v. Harris,
    2012 WL 4369766 (E.D.N.Y. Sept. 24, 2012) .......................................................14

Shmueli v. City of New York,
    424 F.3d 231 (2d Cir. 2005)..............................................................................20, 21

People ex rel. Spitzer v. Applied Card Sys.,
    11 N.Y.3d 105 (2008) ...........................................................................................18

Steinberg v. Elkman,
    666 Fed. App'x 26 (2d Cir. 2016)...........................................................................14

Sutherland v. NYS Dep't of Law,
    1999 WL 314186 (S.D.N.Y. May 19, 1999), aff'd on other gds., 216 F.3d
    1073 (2d Cir. 2000)...........................................................................................13, 14

Swiatkowski v. Citibank,
    745 F. Supp. 2d 150 (E.D.N.Y. 2010), aff'd, 446 Fed. App'x 360 (2d Cir.
    2011) ....................................................................................................................18, 20

Tannerite Sports, LLC v. NBCUniversal News Grp.,
    864 F.3d 236 (2d Cir. 2017)...........................................................................................24

Trotman v. Palisades Interstate Park Comm'n,
    557 F.2d 35 (2d Cir. 1977).............................................................................................13

Truong v. Truong,
    2007 WL 415152 (S.D.N.Y. Feb. 5, 2007)....................................................................18

Virginia Office for Prot. & Advocacy v. Stewart,
    563 U.S. 247 (2011)........................................................................................................13

Warren v. Altieri,
    59 Fed. App'x 426 (2d Cir. 2003)...................................................................................25

Will v. Mich. Dep't of State Police,
    491 U.S. 58 (1989)..........................................................................................................14

Williams v. Buffalo Pub. Sch.,
    758 Fed. App'x 59 (2d Cir. 2018)..............................................................................24, 25

Zanfardino v. City of New York,
    230 F. Supp. 3d 325 (S.D.N.Y. 2017)............................................................................23

Ying Jing Gan,
    996 F.2d 522 (2d Cir. 1993)............................................................................................21

## CONSTITUTIONS

U.S. Const. amend. V.............................................................................................................21

U.S. Const. amend. XI......................................................................................................13, 15

U.S. Const. amend. XIV..................................................................................................13, 21

## FEDERAL STATUTES

28 U.S.C.
    § 1257.............................................................................................................................15
    § 1738.............................................................................................................................18

42 U.S.C.
    § 1983........................................................................................................................ passim

vi

U.S. Internal Revenue Code
   § 501(c)(3) .................................................................................................2

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)..................................................................1, 12, 14, 17

Fed. R. Civ. P. 12(b)(6)..............................................................1, 2, 12, 20, 24

Fed. R. Evid. 201(a) .....................................................................................4

**STATE STATUTES**

N.Y. CPLR 215..............................................................................................25

N.Y. Executive Law
   § 63(12) .....................................................................................................3

N.Y. General Business Law
   §§ 349(a) and 350 .....................................................................................4

N.Y. Judiciary Law
   § 478........................................................................................................ 4-5

**MISCELLANEOUS AUTHORITIES**

Bronx County Clerk, https://iapps.courts.state.ny.us/ctclrk/ ......................4

Development, Relief, and Education for Alien Minors Act,
   S. 1291, 107th Cong. (2001) ....................................................................4

Marisa S. Cianciarulo, The "Arizonification" of Immigration Law: Implications
   of Chamber of Commerce v. Whiting for State and Local Immigration
   Legislation, 15 Harv. Latino L. Rev. 85, 98 (2012) ................................ 4

Gothamist, Serial Scammer Jailed for Posing as An Immigration Lawyer, Oct. 4,
   2016, https://gothamist.com/news/serial-scammer-jailed-for-posing-as-an-
   immigration-lawyer ...................................................................................10

Gothamist, Undocumented New Yorkers Say They're Victims of a Bronx Man's
   Visa Scam, July 30, 2019, https://gothamist.com/news/undocumented-new-
   yorkers-say-theyre-victims-of-a-bronx-mans-visa-scam ..........................10

WPIX 11, Bronx man convicted of defrauding immigrants accused of doing it
   again, July 30, 2019, https://pix11.com/2019/07/30/bronx-man-convicted-of-
   defrauding-immigrants-accused-of-doing-it-again/ ...............................10

Defendants the New York State Office of the Attorney General ("OAG") and Assistant

Attorney General Roberto Lebron ("AAG Lebron") (collectively, "State Defendants"), by their

attorney, Letitia James, Attorney General of the State of New York, respectfully submit this

memorandum of law in support of their motion to dismiss plaintiff's Second Amended

Complaint ("SAC")[1] pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

## PRELIMINARY STATEMENT

Plaintiff brings this action complaining that State Defendants subjected him to intentional

infliction of emotional distress, malicious prosecution, abuse of process, due process violations,

and defamation in the context of a civil prosecution they have successfully pursued against him

in New York State Court for the past fifteen years for engaging in deceptive acts and practices,

and false advertising.  In short, this action is an effort by plaintiff to implement the old adage that

"the best defense is a good offense."  However, plaintiff's offense in this action is at best

insubstantial.  His claims are barred by sovereign immunity, the <u>Rooker-Feldman</u> doctrine, and

the doctrine of <u>res</u> <u>judicata</u> or claim preclusion.  Further, prosecutorial immunity bars his claims

against AAG Lebron, and his allegations simply fails to state any claim at all.  Finally, most if

not all of his claims are barred by the applicable statutes of limitations.  Accordingly, plaintiff's

SAC must be dismissed as against the State Defendants.

## STATEMENT OF FACTS[2]

### 1.  Plaintiff's Alleged Directorship of Homeward Bound Program for Children, Inc.

Plaintiff <u>pro</u> <u>se</u> Edwin Rivera ("plaintiff") alleges that he is the director of a non-profit

---

[1] Plaintiff's current complaint is styled as an "Amended Complaint" (ECF Doc. 39), however, it is the second amended complaint he has filed in this action.  (<u>See</u> ECF Doc. 2 (Complaint, filed Apr. 8, 2019); ECF Doc. 24 (Amended Complaint, filed Aug. 8, 2019); ECF Doc. 39 ((Second) Amended Complaint, filed Oct. 18, 2019)).

[2] Also submitted in support of State Defendants' motion is the declaration of Assistant Attorney General David B. Diamond ("Diamond Declaration"), dated December 30, 2019, which attaches the SAC (ECF Doc. 39, pp. 1-53), plaintiff's affidavit in support of the SAC (ECF Doc. 39, pp. 54-62), several of the nineteen exhibits referenced in and filed with the SAC (ECF Docs. 30-1, 30-2), and decisions and judgments filed in a New York Supreme Court

religious organization known as the Homeward Bound Program for Children, Inc. ("HBP"). According to plaintiff, HBP is organized under Section 501(c)(3) of the Internal Revenue Code and operates from an office located in the Bronx, New York. (Exhibit A, SAC at p. 1 & ¶¶4-5, 15, 38).[3] Out of its Bronx office, HBP allegedly holds religious services, raises funds by selling accounting services, and provides services to the community such as "writing letters and filling out forms for immigration offices and for school." (Ex. A, SAC ¶¶1-3, 6).

### 2. Plaintiff's Alleged Submission of Applications and Petitions to Co-Defendant United States Customs and Immigration Service

Plaintiff alleges that on or about October 13, 2017, he submitted a Form EOIR-31 application to co-defendant the United States Customs and Immigration Service ("USCIS") seeking to have HBP recognized as an organization authorized to represent individuals in U.S. immigration courts through an accredited representative, and a Form EOIR-31A application to have himself recognized as an accredited representative. (Ex. A, SAC at p. 7; id. ¶¶32, 34 & Exhibit B (SAC Ex. 9); Exhibit C (Aff. of [Plaintiff] in Supp. of [SAC], dated Oct. 10, 2019 ("Pl's Aff.") ¶16)). On or around December 15, 2017, co-defendant the Department of Justice, Office of Legal Access Programs ("OLAP") allegedly denied both applications. (Ex. A, SAC ¶¶34, 41-45, 47 & Ex. B (SAC Ex. 9); Ex. C (Pl's Aff.) ¶16).

Plaintiff similarly claims that on or about March 23, 2018, on behalf of three individuals who are "members" of HBP, he submitted Form I-360 petitions to USCIS seeking to have them classified as Special Immigrant Religious Workers under a particular subsection of the

---

(footnote 2 cont'd) proceeding that plaintiff references in the SAC. The Court may consider these materials in ruling on State Defendants' motion because it is well settled that in evaluating a Rule 12(b)(6) motion the Court may consider documents attached to the Complaint as an exhibit or incorporated by reference, documents in plaintiff's possession or of which he had knowledge and relied upon in bringing suit, and matters of which judicial notice may be taken. E.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

[3] Unless otherwise noted, citations to letter exhibits (i.e., "Exhibit A") refer to exhibits to the Diamond Declaration.

Immigration and Nationality Act ("INA"). (Ex. A, SAC pp. 6-7 (Introduction); id. ¶¶7-11, 18-19 & Exhibit D (SAC Ex. 8), Exhibit E (SAC Ex. 18), ¶38). He claims that USCIS denied the HBP members' Form I-360 petitions and denied an appeal by one such member from the initial denial of her petition. (Ex. A, SAC ¶¶18-19 & Exs. D, E (SAC Exs. 8, 18), ¶¶38-39).

### 3. State Defendants' Alleged Involvement in the Denial of the Petitions and Applications Plaintiff Submitted to USCIS

Plaintiff alleges that State Defendants unlawfully caused the denial of the Form EOIR-31 and EOIR-31A applications he submitted to USCIS on behalf of HBP and himself, as well as the Form I-360 petitions he submitted on behalf of the three HBP members. (Ex. A, SAC ¶¶11, 25; Ex. C (Pl's Aff.) ¶16). In particular, he claims that when USCIS denied the applications and petitions it improperly relied on fact findings and legal conclusions set forth in a May 6, 2005 Decision and Order, and October 19, 2005 Judgment and Order that were issued in a 2004 civil proceeding that AAG Lebron successfully prosecuted against him in New York Supreme Court, Bronx County, entitled People v. Rivera, 1576/2004 (Sup. Ct. Bronx Cty.). (Ex. A, SAC ¶¶F-G; id. ¶¶34-39, 44-48; id. ¶¶4-5 (ECF Doc. 39, p. 44 of 209) (referencing May 6, 2005 Decision and Order in People v. Rivera); Ex. C (Pl's Aff.) ¶¶16-17 (referencing May 6, 2005 Decision and Order and October 19, 2005 Judgment and Order in People v. Rivera)).[4]

### 4. The OAG's Prosecution of Plaintiff in People v. Rivera, 1576/2004 (Sup. Ct. Bronx Cty)

In the People v. Rivera proceeding (the "State Court proceeding"), pursuant to the authority provided by N.Y. Executive Law § 63(12) the OAG obtained a Decision and Order against plaintiff dated May 6, 2005 (the "May 6, 2005 Decision and Order"), and a Judgment and Order against him issued on October 19, 2005, that was entered on November 18, 2005 (the

---

[4] To the extent plaintiff is alleging that AAG Lebron violated his federal rights because USCIS denied his applications and petitions, AAG Lebron cannot be liable for such denials or any other conduct by the Federal Defendants because he lacked personal involvement in such conduct. Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) (individual liability under § 1983 requires a showing of the defendant's personal involvement).

"November 18, 2005 Judgment and Order").  (Exhibit F (<u>Rivera</u>, 1576/2004, May 6, 2015 Dec'n and Order); Exhibit G (<u>Rivera</u>, 1576/2004, Nov. 18, 2005 Judgm't and Order (issued Oct. 18, 2005, entered Nov. 18, 2005)); <u>also</u> Exhibit H (<u>Rivera</u>, 2005 WL 7150194, at *1-2 (Sup. Ct. Bronx Cty. Nov. 18, 2005) (Nov. 18, 2005 Judgm't and Order)).[5]

**(a)  The May 6, 2005 Decision and Order.**

In its May 6, 2005 Decision and Order in the State Court proceeding, the Supreme Court held that plaintiff had engaged in deceptive acts and practices, and false advertising while providing immigration services to the public, in violation of N.Y. General Business Law §§ 349(a) and 350; and had engaged in the unlicensed practice of law by falsely holding himself out as an attorney in violation of N.Y. Judiciary Law § 478.  (Ex. F at 9-11).

Specifically, the Supreme Court found that in offering immigration services to the public, plaintiff had made false representations concerning the status of the unenacted federal legislation known as the Development, Relief & Education for Alien Minors Act (the "DREAM Act")[6], and had charged numerous immigrants seeking legal residency $1,500 dollars each to submit supposed DREAM Act applications on their behalves, all of which were denied by federal immigration authorities.  (Ex. F at 4-11).  The court also found that plaintiff had falsely held himself out as an attorney in advertising, conversations, and written immigration applications he

<hr/>

[5] The Court may take judicial notice of decisions and other filings in <u>People v. Rivera</u>, 1576/2004 (Sup. Ct. Bronx Cty.).  Fed. R. Evid. 201(a); <u>Pelosi v. Spota</u>, 607 F. Supp. 2d 366, 371 (E.D.N.Y. 2009).  Selected unreported decisions and other filings in the case are attached as exhibits to the Diamond Declaration as indicated, and are also available on the Bronx County Clerk's website: <u>https://iapps.courts.state ny.us/ctclrk/</u>.

[6] The DREAM Act legislation was first introduced by Senator Orrin Hatch in 2001.  <u>See</u> Development, Relief, and Education for Alien Minors Act, S. 1291, 107th Cong. (2001).  In its initial form, the DREAM Act would have would have granted lawful permanent residency to non-resident immigrant children who were at least twelve years old before the date of its enactment and who filed a DREAM Act application for lawful permanent residency before turning twenty-one provided they met certain residency, educational, and character conditions.  <u>Id.</u> § 3(a)(1). The DREAM Act was not enacted in its initial form and has since been introduced in at least twenty different forms, none of which have been enacted.  <u>See</u> Marisa S. Cianciarulo, <u>The "Arizonification" of Immigration Law: Implications of Chamber of Commerce v. Whiting for State and Local Immigration Legislation</u>, 15 Harv. Latino L. Rev. 85, 98 (2012) (summarizing procedural history of DREAM Act legislation).

submitted on behalf of clients to federal immigration authorities.  (Id. at 9-11).  The May 5, 2005

Decision and Order directed the OAG, as petitioner, to settle an order on notice for relief.  (Id).

**(b) The November 18, 2005 Judgment and Order**

Pursuant to the Supreme Court's directive in the May 5, 2005 Decision and Order to

settle an order for relief, the OAG sought and obtained the November 18, 2005 Judgment and

Order setting set forth several specific forms of injunctive relief against plaintiff. (Ex. H (Rivera,

2005 WL 7150194, at *1-2 (Sup. Ct. Bronx Cty. Nov. 18, 2005).  Among other directives, the

November 18, 2015 Judgment and Order provided that:

> [Plaintiff] is enjoined and prohibited from engaging in any of the fraudulent,
> deceptive or illegal acts and practices alleged in the Amended Verified Petition in
> violation of GBL §§ 349, 350 and 130, and Judiciary Law § 478, including, but not
> limited to:
>
> (a) Holding himself out to the public as being entitled to practice law
> without being duly licensed and admitted to practice law in the State of New York
> including, but not limited to, maintaining a law office in New York; advertising
> that he is an attorney; representing orally and in writing that he is an attorney;
> appearing as an attorney-at-law in a court of record; and rendering legal advice;
>
> (b) Falsely advertising or otherwise misrepresenting any aspect of the
> process of adjusting immigration status, or any other service available in
> immigration matters;
>
> (c) Accepting money for services which he is not legally entitled to perform,
> or accepting money for services which he is legally entitled to perform and then
> failing to perform such services;
>
> (d) Failing to provide refunds to consumers;
>
> (e) Directly or indirectly destroying or disposing of any records pertaining
> to his business;
>
> (f) Conducting a business under a name other than his real name without
> filing a certificate providing the name or designation under which he does business
> with the clerk of each county the business is conducted . . .

(Ex. H at *1-2)).  Other relief provisions in the November 18, 2015 Judgment and Order directed

plaintiff to provide the OAG with a complete accounting of his consumer transactions and pay

$24,331 in restitution to the numerous consumers he had defrauded.  (Id.)

**(c) The Decision and Orders Holding Plaintiff in Civil or Criminal Contempt**

From late July 2008 through August 22, 2016, the OAG obtained four additional Decision and Orders in the State Court proceeding holding plaintiff in criminal or civil contempt of the November 18, 2005 Judgment and Order. (Exhibit I (Rivera, 1576/2004, Dec'n and Order dated July 29, 2008); Exhibit J (Rivera, 1576/2004, Dec'n and Order dated July 20, 2009); Exhibit K (Rivera, 1576/2004, Dec'n and Order dated Oct. 27, 2011); Exhibit L (Rivera, 1576/2004, Dec'n and Order dated Aug. 22, 2016). These Decision and Orders were obtained by the OAG via motions supported by evidence demonstrating that plaintiff was continuing to falsely hold himself out both as an individual authorized to provide immigration services and as an attorney, and had failed to pay the restitution previously ordered. (Exs. I, J, K, L).

In its first Decision and Order holding plaintiff in contempt of the November 18, 2005 Judgment and Order, issued on July 29, 2008 ("July 29, 2008 Decision and Order"), the Supreme Court held plaintiff in criminal contempt after finding that he had continued to offer immigration services to the public while not authorized to do so by USCIS, and had falsely held himself out as an attorney. (Ex. I). In its Decision and Order, the court included a further sweeping order of injunctive relief against plaintiff in the form a directive: "permanently enjoining him from offering immigration services of any kind in exchange for payment to any person in New York." (Ex. I at 1) (emphasis supplied). Thereafter, in ruling on the OAG's later contempt motions, the Supreme Court consistently held that plaintiff had violated the November 18, 2005 Judgment and Order and the July 29, 2008 Decision and Order by, among other things, continuing to offer immigration services to the public and holding himself out as an attorney. (Exs. J, K, L).

**(d) The Warrants of Commitment Issued for Plaintiff's Arrest**

Based on the Decision and Orders in the State Court proceeding holding plaintiff in contempt, the OAG obtained Warrants of Commitment for his arrest and incarceration. (Exhibit

M (<u>Rivera</u>, 1576/2004, Warrant of Comm't dated July 20, 2009); Exhibit N (<u>Rivera</u>, 1576/2004, Warrant of Comm't dated Oct. 27, 2010); Exhibit O (<u>Rivera</u>, 1576/2004, Warrant of Comm't dated Nov. 7, 2011); Exhibit P (<u>Rivera</u>, 1576/2004, Warrant of Comm't dated Sept. 23, 2016).

## 5. Plaintiff's Motions to Dismiss the State Court Action

Plaintiff twice moved to dismiss the State Court proceeding; both motions were denied as moot based on the May 6, 2005 Decision and Order that determined the merits of the proceeding and which plaintiff failed to appeal.  <u>People v. Rivera</u>, 2013 WL 6822885, at *1 (Sup. Ct. Bronx Cty. Mar. 1, 2013); <u>People v. Rivera</u>, 2013 WL 6832083, at *1 (Sup. Ct. Bronx Cty. Aug. 27, 2013), <u>aff'd</u>, 129 A.D.3d 476, 477 (1st Dep't 2015).

## 6. Plaintiff's Court of Claims Action Alleging False Arrest and the Dismissal Thereof

On or around May 4, 2017, plaintiff filed an action in the New York Court of Claims alleging that the Attorney General had subjected him to a false arrest on February 16, 2017, and other false arrests and unlawful actions from May 2005 through November 2011.  (Exhibit Q (SAC Ex. 5) (<u>Rivera v. State of New York</u>, Claim No. 129436, page 1, dated "3/13/17"); Exhibit R (<u>Rivera v. State of New York</u>, Claim No. 129674, dated May 4, 2017)).[7]

In the Court of Claims action plaintiff advanced several of the same allegations he asserts in this action concerning AAG Lebron's supposed false arrests and retaliatory prosecution of him for an audit he purportedly conducted of the Puerto Rican Bar Association.  (<u>Compare</u> Ex. A, SAC at p. 7; <u>id.</u> ¶¶55; <u>id.</u> ¶¶1-6 (pp. 39-40); <u>id.</u> ¶¶4-12 (at pp. 44-45) (allegations of retaliatory prosecution) <u>and</u> <u>id.</u> ¶H; <u>id.</u> ¶¶24; ¶¶4-5 (at p. 44) (allegations of false arrest), <u>with</u> Ex. Q (Claim No. 129436, page 1, dated "3/13/17").  On June 15, 2018, the Court of Claims dismissed the action based on AAG Lebron's absolute prosecutorial immunity and plaintiff's failure to state a

---

[7] Plaintiff filed Claim No. 129436 on March 17, 2017 (Ex. Q), which was dismissed based on improper service. (Exhibit S (<u>Rivera v. State of New York</u>, Claim No. 129436 (N.Y. Ct. Cl.), Decision dated Sept. 6, 2017).  On May 4, 2017, he filed Claim No. 129674 (Ex. R) which asserted essentially the same fact allegations.  (Ex. S at 2 & n. 1).

cause of action for false arrest.  (Ex. Q (SAC Ex. 5) (<u>Rivera v. State of New York</u>, Claim No. 129674 (N.Y. Ct. Cl.), Dec'n and Order, dated June 15, 2018).

## 7.  The Denials by USCIS and OLAP of the Applications and Petitions Plaintiff Submitted

### (a)  USCIS's Denial of the Form EOIR-31 and EOIR-31A Applications

In a written decision issued on or about December 15, 2017, OLAP denied the Form EOIR-31 and EOIR-31A applications plaintiff alleges he submitted to obtain authorization for HBP to represent individuals in U.S. immigration courts, and to have himself accredited as a representative.  (Ex. A, SAC ¶¶41-47 & Ex. B (SAC Ex. 9) (ECF Doc. 39 at pp. 166-167)). OLAP denied the Form EOIR-31 and EOIR-31A applications after it had received recommendations that the applications be denied from the Director of the USCIS New York District Office.  (Ex. B (SAC Ex. 9) (ECF Doc. 39 at pp. 166-167, 168-172, 173-179)).  The principal basis OLAP's decision to deny the applications was plaintiff's failure to demonstrate in accordance with applicable regulations that he possessed the "'character and fitness to represent clients before the Immigration Courts."  (<u>Id.</u> (ECF Doc. 39 at pp. 166).  OLAP's decision stated that plaintiff had been identified by the Executive Office of Immigration Review, Fraud and Abuse Prevention Program "as a person of concern due to his history of prosecution for fraud and theft."  (<u>Id.</u>).  It further noted that in October 2016, plaintiff had been arrested and ordered to serve jail time for violating the November 18, 2005 Judgment and Order, and the July 29, 2008 Decision and Order that enjoined him from providing immigration services to the public and directed him to pay restitution.  (<u>Id.</u>; Ex. L, at 12; Ex. P).

### (b)  USCIS's Denial of the Three HBP Members' Form I-360 Petitions

On or about March 7, 2019, on each of following grounds, USCIS denied two of the three Form I-360 petitions plaintiff alleges he submitted on behalf of HBP members to have them classified as Special Immigrant Religious Workers:

(1) USCIS determined the petitioners were not employed in "qualifying positions" based on applicable INA regulations (Ex. D (SAC Ex. 8) (ECF Doc. 39, pp. 147-149, 153-155));

(2) USCIS determined the petitioners did not have sufficient "qualifying work experience" under applicable INA regulations (Id. (ECF Doc. 39, pp. 149-150, 155-156); and

(3) A "compliance review" that USCIS conducted of HBP's operations pursuant to INA regulations, revealed that while the November 18, 2005 Judgment and Order[8] had ordered plaintiff, HBP's Director, "to stop engaging in the unlawful practice of immigration law and pay $24,331.00 [in restitution] to the [OAG]," records maintained by USCIS indicated that plaintiff or HBP had been listed on applications submitted to USCIS since that Judgment and Order was issued. (Id. (ECF Doc. 39, pp. 150-151, 156-157).

The third HBP member's Form I-360 petition was apparently denied by USCIS on the first two of the foregoing grounds, but not the third. (Ex. B (SAC Ex. 9) (ECF Doc. 39-2, pp. 11-14)).

## 8. Plaintiff's Factual Allegations Concerning State Defendants' Unlawful Conduct

In this action, plaintiff contends that the May 6, 2005 Decision and Order and the November 18, 2005 Judgment and Order in the State Court proceeding were based on false allegations by AAG Lebron and are therefore void. (Ex. A, SAC at p. 9, lines 5-19; id. ¶¶24, 35, 39, 46; id. ¶¶11-12 (at pp. 50-51). More specifically, he insists that AAG Lebron's prosecution of the proceeding was founded on fabricated allegations and pursued in retaliation for an audit he supposedly conducted of the Puerto Rican Bar Association during which he allegedly uncovered evidence of misappropriated funds for which AAG Lebron was responsible. (Id. at p. 7, line 18 – p. 8, line 12; id. ¶¶55; id. ¶¶1-6 (pp. 39-40); id. ¶¶4-12 (at pp. 44-45).

Plaintiff further claims that he was subjected to unspecified false arrests based on the warrants of commitment the OAG obtained in the State Court proceeding, which he contends were based on the false information AAG Lebron allegedly presented to obtain the May 6, 2005 Decision and Order. (Ex. A, SAC ¶H; id. ¶¶24; ¶¶4-7 (at p. 44)). He also claims that in

---

[8] The USCIS referenced an October 19, 2005 decision by the New York Supreme Court, however, as noted in Part 4, supra, the November 18, 2005 Judgment and Order was issued on October 19, 2005, and entered on November 18, 2005. (Ex. G (Nov. 18, 2005 Judgm't and Order (issued Oct. 18, 2005, entered Nov. 18, 2005)); also Ex. H (Rivera, 2005 WL 7150194 (Sup. Ct. Bronx Cty. Nov. 18, 2005) (Nov. 18, 2005 Judgm't and Order).

violation of his due process rights, neither he nor his attorney ever received notice of procedural events in proceeding.  (Ex. A, SAC at p. 8, lines 14 –19; id. ¶¶L-M; id. ¶59; id. ¶¶5, 7 (at p. 44)).

Finally, plaintiff alleges that statements AAG Lebron made publicly defamed him in his "business and trade as an accounting contractor."  (Ex. A, SAC ¶¶4-8 (pp. 49-50)).  Specifically, he alleges that on or about July 29, 2019, in the presence of an attorney named Anibal Romero, AAG Lebron stated: "[Plaintiff] is under investigation and he will be arrested with the cooperation of each Religious Worker."  (Id. ¶4 (p. 49) (italics in original)).  Plaintiff similarly claims that on or around the same date, AAG Lebron stated to an unspecified number of apparently disgruntled religious workers employed by HBP: "You must come to our office to help keep Rivera in prison for a long time." (Id. ¶5 (p. 49) (italics in original)).[9]  Plaintiff alleges that on October 4, 2016, AAG Lebron made the false and defamatory statement that "Though [his] business was billed as an accounting office, Rivera advertised himself as an attorney with more than 30 years of experience, targeting undocumented immigrants looking to legalize their status . . . ."  (Ex. A, SAC ¶7 (p. 50) (italics in original)).[10]

## 9.  Plaintiff's Claims and the Relief He Seeks

Plaintiff advances six claims, each labeled as a "Cause of Action."  (Ex. A, SAC ¶¶23-40 (first), ¶¶41-87 (second); id. ¶¶1-11 (pp. 39-43) (third); id. ¶¶1-15 (pp. 43-46) (fourth); id. ¶¶16-

---

[9] The statements plaintiff alleges that AAG Lebron made on July 29, 2019, apparently occurred in the context of widely reported efforts by private attorney Anibal Romero to prompt the OAG to investigate claims by several undocumented immigrants whom Romero represents, that plaintiff had illegally had taken their money in exchange for promises of religious visas.  (Gothamist, Undocumented New Yorkers Say They're Victims of a Bronx Man's Visa Scam, July 30, 2019, https://gothamist.com/news/undocumented-new-yorkers-say-theyre-victims-of-a-bronx-mans-visa-scam; WPIX 11, Bronx man convicted of defrauding immigrants accused of doing it again, July 30, 2019, https://pix11.com/2019/07/30/bronx-man-convicted-of-defrauding-immigrants-accused-of-doing-it-again/).

[10] In alleging that AAG Lebron made this statement, plaintiff apparently quotes an October 4, 2016 news article that reported on his arrest on October 3, 2016, and the August 22, 2016 Decision and Order in the State Court action holding him in civil and criminal contempt.  (Ex. A, SAC ¶7 (p. 50); Gothamist, Serial Scammer Jailed for Posing as An Immigration Lawyer, Oct. 4, 2016, https://gothamist.com/news/serial-scammer-jailed-for-posing-as-an-immigration-lawyer). The article attributed the statement plaintiff alleges to the OAG.  (Id.)

20 (pp. 46-48) (fifth); <u>id.</u> ¶¶1-13 (pp. 48-51) (sixth)).  The first, third, fourth, and sixth causes of action appear to be asserted against the State Defendants, or both the State Defendants and the remaining defendants (the "Federal Defendants").  His second and fifth causes of action appear to be asserted only against the Federal Defendants.  (<u>Id.</u> ¶¶41-87; <u>id.</u> ¶¶16-20 (pp. 46-48)).

Plaintiff's first cause of action against the State Defendants is a State law claim for "Intentional Infliction of Emotional Distress."  (Ex. A, SAC ¶¶23-40).  He seeks equitable relief on the claim in the form of an order directing the State Defendants to reverse the denials by OLAP and USCIS of the applications and petitions he submitted to USCIC.  (<u>Id.</u> ¶37).

Plaintiff's third and fourth causes of action appear to be brought under 42 U.S.C. § 1983.  His third cause of action appears to advance claims for money damages for AAG Lebron's supposed malicious prosecution of the State Court proceeding based on false allegations and violation of his due process rights based AAG Lebron's his supposed failure to provide him with adequate notice in the proceeding.  (Ex. A, SAC ¶¶1-11 (pp. 39-43).  Relying on similar factual allegations, plaintiff's fourth cause of action (<u>Id</u>. ¶¶1-15 (pp. 43-46)) appears to assert claims for malicious prosecution and abuse of process under § 1983.  On these claims plaintiff apparently seeks equitable relief in the form of an order invalidating the May 6, 2005 Decision and Order, the November 18, 2005 Judgment and Order, and the other orders in the State Court proceeding, and possibly money damages.  (<u>Id.</u> ¶¶4, 13, 15 (pp. 43-46); <u>id.</u> at p. 52).

Finally, plaintiff's sixth cause of action appears to assert a defamation claim under state law based on statements made by AAG Lebron concerning the prior and ongoing prosecution of the State Court proceeding.  (Ex. A, SAC ¶¶1-13 (pp. 48-51)).  On this claim plaintiff seeks money damages, as well as equitable relief against the State Defendants in the form an order

enjoining them from obtaining warrants for his arrest for his violation of the November 18, 2005

Judgment and Order, and the July 29, 2008 Decision and Order.  (Id. ¶¶8-9, 11-12 (pp. 50-51))

**Standards of Review**

### A.      Fed. R. Civ. P. 12(b)(1)

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1),

a when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova

v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "In considering a motion to dismiss for lack

of subject matter jurisdiction, [courts] accept as true all material factual allegations in the

complaint.  However, argumentative inferences favorable to the party asserting jurisdiction

should not be drawn."  Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198

(2d Cir. 1992) (internal citations omitted).  Plaintiff bears the burden of proving subject matter

jurisdiction exists, and in deciding the issue the Court "may refer to evidence outside the

pleadings."  Makarova, 201 F.3d at 113.

### B.      Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)] a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.  The standard demands more than a "sheer possibility that a defendant

has acted unlawfully."  Id.  Thus, a complaint that alleges facts "consistent with" or "compatible

with" the defendants' liability fails to state a claim.  Twombly, 550 U.S. at 557.  Further, while

courts are required to construe a pro se plaintiff's complaint liberally, the pro se's allegations

must nevertheless state a plausible claim.  Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013).

**ARGUMENT**

**POINT I**

**ALL OF PLAINTIFF'S CLAIMS AGAINST THE OAG, AND HIS DAMAGES CLAIMS AGAINST AAG LEBRON IN HIS OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT**

It is settled law that the Eleventh Amendment bars all federal suits against the State, for any kind of relief, absent the State's unequivocal waiver of its immunity or a valid abrogation of that immunity by Congress pursuant to its authority under Section 5 of the Fourteenth Amendment. Virginia Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253-54 (2011). Eleventh Amendment immunity "extends beyond the states themselves to state agencies and state instrumentalities that are, effectively, arms of a state." Mary Jo C. v. N.Y. State & L. Ret. Sys., 707 F.3d 144, 152 (2d Cir. 2013) (internal quotation marks omitted).

The OAG is unquestionably an arm of the State of New York for purposes of Eleventh Amendment immunity. Morgan v. NYS Att'y Gen'l's Office, 2013 WL 491525, at *11 (S.D.N.Y. Feb. 8, 2013) (Eleventh Amendment immunity "extends to 'arms of the state,' such as the OAG, as well as to its officials sued in their official capacities for money damages"); Sutherland v. NYS Dep't of Law, 1999 WL 314186, at *5 (S.D.N.Y. May 19, 1999 ("Eleventh Amendment barred plaintiff's § 1983 claims against the OAG, and the Attorney General in his official capacity), aff'd on other gds., 216 F.3d 1073 (2d Cir. 2000). Further, the Eleventh Amendment immunity of the OAG extends to its officials when sued in their official capacities for money damages. Morgan, 2013 WL 491525, at *11; Sutherland, 1999 WL 314186, at *5.

Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 and New York has not waived immunity for § 1983 claims. Quern v. Jordan, 440 U.S. 332, 340-342 (1979); Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977). Moreover, it is settled law that neither the State of New York nor its officials acting

in their official capacity are "persons" subject to liability within the meaning of § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Similarly, New York has not waived its Eleventh Amendment immunity for claims asserted against it based on state law.  Sherman v. Harris, 2012 WL 4369766, at *5 (E.D.N.Y. Sept. 24, 2012); also Sank v. City Univ. of New York, 2011 WL 5120668, at *6 (S.D.N.Y. Oct. 28, 2011).

Assuming all of plaintiff's claims are asserted against the State Defendants, they are all barred as against the OAG based on the agency's Eleventh Amendment immunity.  Morgan, 2013 WL 491525, at *11; Sutherland, 1999 WL 314186, at *5.  Likewise, to the extent plaintiff's claims seek damages against AAG Lebron in his official capacity they are also barred by the Eleventh Amendment.  Morgan, 2013 WL 491525, at *11; Sutherland, 1999 WL 314186, at *5. Accordingly, all of plaintiff claims against the OAG, and his damages claims against AAG Lebron in his official capacity must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## POINT II
### PLAINTIFF'S STATE LAW CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF AGAINST AAG LEBRON ARE BARRED BY THE ELEVENTH AMENDMENT

It is also black letter law that the Eleventh Amendment bars claims in a federal court action that seek relief against state officers in their official capacities based solely on state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).  While the doctrine of Ex parte Young, 209 U.S. 123 (1908) provides an exception for claims for injunctive relief against state officials sued in their official capacities to prevent continuing violations of federal law, even under Ex parte Young a claim for injunctive relief is barred by the Eleventh Amendment immunity if it merely seeks to vindicate a plaintiff's rights under state law.  E.g., Steinberg v. Elkman, 666 Fed. App'x 26, 28 (2d Cir. 2016); Dube v. State Univ. of New York, 900 F.2d 587, 595 (2d Cir. 1990).  Accordingly, to the extent plaintiff's first or sixth causes of action seek

injunctive relief against AAG Lebron under Ex parte Young and based only on state law tort principles, those claims are barred by Eleventh Amendment immunity.

## POINT III
### PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE

Plaintiff's claims against the State Defendants are all based on his allegations concerning the supposed unconstitutionality or other legal infirmities of the May 6, 2005 Decision and Order, the November 18, 2005 Judgment and Order, or the later orders entered in the State Court proceeding. The Rooker-Feldman doctrine bars plaintiff's attempt here to collaterally attack the orders entered against him the State Court proceeding that he claims have injured him and that he insists are legally flawed.

The Rooker-Feldman doctrine arises from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), and stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 296 (1970); Hoblock v. Albany Cty. Bd. of Elecs., 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). "Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Hoblock, 422 F.3d at 85.

Although the Rooker-Feldman doctrine had often been understood as co-extensive with the concepts of issue and claim preclusion, the Supreme Court clarified the scope of the doctrine in Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), and confirmed that it continues to apply with full force "'to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Hoblock, 422 F.3d at 84-85 (quoting Exxon Mobil, 544 U.S. at 284).

Based on the Exxon Mobil decision, the Second Circuit has delineated four requirements for the application of Rooker-Feldman: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Id. (quoting Exxon Mobil, 544 U.S. at 284) (internal quotation marks and alterations omitted).

All of these requirements are met here with respect to at least the first five if not all six of plaintiff's claims.[11] First, it is indisputable that plaintiff was the losing party in the State Court proceeding. Ex. C (Pl's Aff.) ¶¶16-17 (plaintiff's acknowledgment of May 6, 2005 Decision and Order, and October 19, 2005 Judgment and Order entered against him in People v. Rivera); Ex. F (May 6, 2005 Dec'n and Order); Ex. G (Nov.18, 2005 Judgm't and Order).

Second, plaintiff's first five claims allege injuries caused by the May 6, 2005 Decision and Order or the November 18, 2005 Judgment and Order in the State Court proceeding, or the later Decision and Orders holding him in contempt or Warrants of Commitment for his arrest which were based on those orders. Ex. A, SAC at pp. 7-10; ¶¶F-H, L-N; id. ¶¶20, 34-36, 39, 44-48, 53-55, 59, 62, 87; id. ¶¶1-11 (ECF Doc. 39, pp. 39-43 of 209); id. ¶¶1-8, 11-12 (ECF Doc. 39, pp. 43-46 of 209); id. ¶16 (ECF Doc. 39, p. 46). Although less explicit, his sixth claim also

---

[11] Insofar as plaintiff's sixth claim is for defamation under New York law based on statements AAG Lebron allegedly made on July 29, 2019, and October 4, 2016 (Ex. A, SAC ¶¶4-9 (ECF Doc 39 at pp. 49-50), it is possible that the claim is outside any application of the Rooker-Feldman doctrine because plaintiff may be contending that the statements and his resultant injuries were not caused by orders in the State Court proceeding and in asserting the claim he may not be seeking review and reversal of orders entered in that proceeding.

invokes the prior orders entered in the State Court proceeding as the basis for his injuries and seeks their reversal.  Id. ¶¶11-13 (ECF Doc. 39, pp. 50-51).

Third, plaintiff's allegations in the SAC and statements in his affidavit in support thereof, repeatedly invite this Court to review and reverse the May 6, 2005 Decision and Order and November 18, 2005 Judgment and Order.  Ex. A, SAC ¶¶33-37, 87; id. ¶¶8-11 (ECF Doc. 39, pp. 41-43 of 209); id. ¶¶4, 13 (ECF Doc. 39, pp. 44, 46 of 209); id. ¶¶16-19 (ECF Doc. 39, pp. 46-48); id. ¶¶11-13 (ECF Doc. 39, pp. 50-51); also Ex. C (Pl's Aff.) ¶¶3-19.

Fourth and finally, the May 6, 2005 Decision and Order and the November 18, 2005 Judgment and Order were entered in the State Court proceeding well before plaintiff commenced this action on April 8, 2019.  (Compare Exs. F, G, with EFC Docs. 1, 2 (Civ. Cover Sheet and Compl. dated Apr. 8, 2019).  Further, plaintiff's motions to dismiss the State Court proceeding, and his unsuccessful appeal of the Supreme Court's order denying one such motion, were all decided years before he initiated this action.  People v. Rivera, 2013 WL 6822885, at *1 (Sup. Ct. Bronx Cty. Mar. 1, 2013); People v. Rivera, 2013 WL 6832083, at *1 (Sup. Ct. Bronx Cty. Aug. 27, 2013), aff'd, 129 A.D.3d 476, 477 (1st Dep't 2015).

The Rooker-Feldman doctrine thus bars all claims in this action because plaintiff is a quintessential "state court loser" who complains of injuries caused by orders in the State Court proceeding that he seeks to have this Court review and overturn, notwithstanding that they were entered before he filed this federal action.  The Court therefore lacks subject matter jurisdiction over plaintiff's claims and they must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## POINT IV
## PLAINTIFF'S CLAIMS ARE BARRED BY CLAIM PRECLUSION

In any event, even if plaintiff's claims are "outside of Rooker-Feldman's compass," they are barred by the doctrine of claim preclusion.  Hoblock, 422 F.3d at 86, 88 & n. 6.  "The

doctrine of claim preclusion, also referred to as res judicata, prevents a plaintiff from raising a claim that was or could have been raised in a prior suit." McKithen v. Brown, 481 F.3d 89, 104 (2d Cir. 2007). Plaintiff's claims meet the applicable test for claim preclusion.

Pursuant to the federal full faith and credit statute, 28 U.S.C. § 1738, the Court must apply New York preclusion law to determine whether claim preclusion bars plaintiff's claims in this case based on the State Court proceeding or his Court of Claims action. McKithen, 481 F.3d 103-104. "New York has adopted a 'transactional approach' to claim preclusion pursuant to which, [o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction are barred. Id. (internal quotations and citations omitted).

Specifically, claim preclusion applies "if (1) there is a previous adjudication on the merits; (2) the previous action involved the party against whom [claim preclusion] is invoked or its privy; and (3) the claims involved were or could have been raised in the previous action." Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (emphasis supplied) (internal quotation marks and alternation omitted), aff'd, 446 Fed. App'x 360 (2d Cir. 2011); see also People ex rel. Spitzer v. Applied Card Sys., 11 N.Y.3d 105, 122 (2008).

"Under New York law, orders and judgments are given preclusive effect even if they are not formally 'final judgments' or if they were never appealed. Truong v. Truong, 2007 WL 415152, at *10 (S.D.N.Y. Feb. 5, 2007). Further, under New York law claim preclusion "applies to defenses that could have been raised in the prior action as well." Swiatkowski, 745 F. Supp. 2d at 171. "Thus, res judicata prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." Id. (emphasis supplied, internal quotation marks omitted).

Here, the elements of claim preclusion are squarely met for at least five if not all six of plaintiff's claims in this action.[12]  First, there has been an adjudication on the merits of the State Court proceeding as set forth the May 6, 2005 Decision and Order, and the November 18, 2005 Judgment and Order.  Exs. F, G & H.  Likewise, there have been prior adjudications on the merits of the contempt motions brought against plaintiff based on his violations of the November 18, 2005 Judgment and Order and the July 29, 2008 Decision and Order.  Exs. I, J, M & O.  In plaintiff's Court of Claims action there has been a prior adjudication on the merits of his false arrest and other claims seeking money damages.  Ex. Q (SAC Ex. 5).

The State Court proceeding involved the same parties or those in privity with them as in this action.  Namely, plaintiff was the respondent, the OAG was the petitioner, and plaintiff alleges that AAG Lebron prosecuted the proceeding as the OAG's agent.  Ex. A, SAC at pp. 7-11, ¶¶F, G, L, M, N, O, 24, 35, 39, 44, 53-55; Krepps v. Reiner, 377 Fed. App'x 65, 68 (2d Cir. 2010) (defendant was in privity with party in prior action because he "was an employee acting within the scope of his employment in connection with the matter [] at issue"); Robinson v. Cusack, 2007 WL 2028112, at *6 (E.D.N.Y. July 11, 2007) ("privity includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party") (internal quotation marks omitted).  Likewise, although the prosecution and defense roles were reversed, plaintiff's Court of Claims action involved the same parties to this action on the same bases.  Ex. Q.

Finally, plaintiff's affirmative claims in this action were or could have been raised as procedural or merits defenses, or as affirmative counter-claims in the State Court proceeding.

---

[12] Insofar as plaintiff's sixth claim is for defamation under New York law based on statements AAG Lebron allegedly made on July 29, 2019 (Ex. A, SAC ¶¶4-9 (ECF Doc. 39 at pp. 49-50), it is possible that the claim is not barred by the doctrine of claim preclusion because alleged conduct post-dates all orders entered in the State Court proceeding and the dismissal of plaintiff's Court of Claims action.

<u>Swiatkowski</u>, 745 F. Supp. 2d at 171-172.  Similarly, his damages claims in this action were or could have been raised in his Court of Claims action.  <u>Id.</u>  In fact, plaintiff raised many of the allegations that underly his affirmative claims in this action as procedural and merits defenses in the State Court proceeding, and all were deemed meritless.  <u>E.g.</u>, Ex. F at 8 ("Respondent argued that petitioner's translation of his advertisements into English was inaccurate"); Ex. I at 7) ("Rivera stated [] that [AAG Lebron] is motivated by personal animus against him"); Ex. J at 5) ("Rivera stated he never had the opportunity to be heard by the court before the November 18, 2005 order was issued and that [AAG Lebron] is merely retaliating against him").  The same is true of plaintiff's Court of Claims action and his damages claims in this case.  Ex Q.

Claim preclusion thus bars plaintiff's claims in this action.  Accordingly, all of his claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## POINT V

### PLAINTIFF'S DAMAGES CLAIMS AGAINST AAG LEBRON ARE BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY

Absolute prosecutorial immunity shields a prosecutor from damages claims in his or her individual capacity to the extent the conduct for which immunity is claimed was integral to his or her prosecutorial functions.  <u>Shmueli v. City of New York</u>, 424 F.3d 231, 236 (2d Cir. 2005) ("a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages") (internal quotation marks omitted); <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 394 (2d Cir. 2006) (applying absolute prosecutorial immunity in the civil context).  Courts employ "a functional approach," focusing on "the nature of the function performed, not the identity of the actor who performed it." <u>Bernard v. Cty. of Suffolk</u>, 356 F.3d 495, 503 (2d Cir. 2004) (internal quotation marks omitted).

Generally, absolute immunity protects "(a) [a] prosecutor's decisions [regarding] whether or not to institute a prosecution and (b) his performance of [] litigation-related duties." Ying Jing Gan, 996 F.2d 522 (2d Cir. 1993). Absolute immunity "accords protection from any judicial scrutiny of the motive for and reasonableness of official action, even where the challenged conduct was motivated by a wrongful motive or even malice." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95-96 (2d Cir. 2007) (internal quotation marks and citations omitted).

Collectively, plaintiff's first, third, and fourth causes of action appear to assert claims against AAG Lebron under State law or 42 U.S.C. § 1983 for intentional infliction of emotional distress, malicious prosecution, denial of due process notice, abuse of process, and defamation. Ex. A, SAC at p. 7, line 18 – p.10, line 8; id. ¶¶F, G, H, I, L, M, N, 23-40; id. ¶¶1-11 (pp. 39-43); id. ¶¶1-15 (pp. 43-46); id. ¶¶1-13 (pp. 48-51).[13] These claims are founded on allegations that AAG Lebron prosecuted the State Court proceeding against plaintiff based on false allegations and for retaliatory reasons, threatened him with arrest, failed to "de-energize" enforcement of a purportedly applicable New York City law, failed to provide him adequate notice of the proceedings, obtained warrants of commitment pursuant to which he was arrested, and disseminated statements about his unlawful actions. Id. They allege conduct by AAG Lebron that is within the ambit of his prosecutorial functions and he is thus entitled to absolute immunity on these claims. E.g., Shmueli, 424 F.3d at 238 (absolute immunity barred claims against prosecutors for alleged malicious prosecution of plaintiff for crimes they knew she did not commit and intentional delay of proceedings to harass her); Bernard, 356 F.3d at 503-505 (absolute immunity shielded prosecutors for alleged malicious or selective prosecution without

<hr />

[13] Plaintiff purports to bring his due process claims under the Fifth and Fourteenth Amendments, but the Fifth Amendment Due Process Clause applies only to the federal government. Dusenbery v. United States, 534 U.S. 161, 167 (2002) (explaining that Fifth Amendment due process clause is binding on the United States, while Fourteenth Amendment due process clause is binding on the states)

probable cause, knowingly presenting false evidence, and withholding exculpatory evidence);

Doe v. City of Bridgeport, 2006 WL 905361, at *4 (D. Conn. Apr. 5, 2006) (absolute immunity

barred claims that prosecutors wrongfully issued re-arrest warrant; falsely assured plaintiff re-

arrest warrant was vacated; and conspired to defame plaintiff).

## POINT VI
## PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE STATE DEFENDANTS

### A.     Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED") under New

York law, a plaintiff "must prove: (1) extreme and outrageous conduct, (2) intent to cause

emotional distress, (3) a causal connection between the conduct and injury, and (4) severe

emotional distress." Jones v. City of New York, 988 F. Supp. 2d 305, 318 (E.D.N.Y. 2013). To

adequately allege the first element, a plaintiff must allege plausibly conduct that is "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Jones, 988 F. Supp. 2d at 318 (internal quotation marks omitted). IIED "is a highly disfavored

tort under New York law, and it is to be invoked only as a last resort to provide relief in those

circumstances where traditional theories of recovery do not." Salmon v. Blesser, 802 F.3d 249,

256 (2d Cir. 2015) (internal quotation marks and citations omitted).

In support of his IIED claim, plaintiff alleges that AAG Lebron prosecuted the State

Court proceeding against him based on false allegations, threatened him with arrest, and failed to

"de-energize" enforcement of a purportedly applicable New York City law. Ex. A, SAC ¶¶24,

31-32, 35. Under prevailing law, these allegations do not plausibly allege the egregious conduct

required to state an IIED claim, nor do they allege conduct for which recovery cannot be sought

under a traditional tort. E.g., Jones, 988 F. Supp. 2d at 318 (allegations that prosecutors failed to

timely disclose exculpatory DNA material in violation of plaintiff's due process rights thus

causing him to be incarcerated longer, and misrepresented lab report demonstrating that DNA

sample from him matched one recovered from victim, failed to plausibly allege outrageous

conduct for IIED claim); Zanfardino v. City of New York, 230 F. Supp. 3d 325, 337 (S.D.N.Y.

2017) (prosecutor's alleged subornation of perjury and withholding of exculpatory evidence did

not allege IIED claim because recovery was proper for malicious prosecution).

### B. Malicious Prosecution

To state a claim for malicious prosecution of a civil action in New York, a plaintiff must

show: "(1) the initiation of an action by the defendant against [the plaintiff], (2) begun with

malice, (3) without probable cause to believe it can succeed, (4) that . . . terminates in favor of

the plaintiff, and (5) causes special injury. Liberty Synergistics, Inc. v. Microflo Ltd., 50 F.

Supp. 3d 267, 284 (E.D.N.Y. 2014) (internal quotation marks omitted). Plaintiff fails to

plausibly allege the fourth element of the claim. He has not alleged that the State Court

proceeding, his Court of Claims action, or any underlying proceeding or action terminated in his

favor, because he cannot allege that proposition. Exs. F, G, H, I, J, M, O.

### C. Denial of Due Process Notice

Plaintiff alleges that AAG Lebron failed to provide him with any notice of the procedural

events in the State Court proceeding and thus the May 6, 2005 Decision and Order and other

orders therein are void because they were entered in violation of his due process rights. Ex. A,

SAC at p. 8; id. ¶¶L-M; id. ¶59; id. ¶¶4, 5, 7 (p. 44). It is indisputable that due process requires

notice "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity to present their objections." Mullane v.

Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

The Decision and Orders in the State Court proceeding discuss plaintiff's opposition arguments and submissions at length, thus demonstrating that he received adequate notice and an opportunity to be heard. Ex. F at 8-11; Ex. I at 7-10; Ex. J at 4-7; Ex. K at 8-10; Ex. L at 11. The Court is not required to credit plaintiff's conclusory allegations of lack of notice when the very Decision and Orders in the State Court proceeding that he claims are void for lack of notice demonstrate that he received notice. Kirkendall v. Halliburton, Inc., 707 F.3d 173, 175 n.1 (2d Cir. 2013); Becker v. Cephalon, Inc., 2015 WL 5472311, at *3, 5 (S.D.N.Y. Sept. 15, 2015).

### D. Abuse of Process

To state an abuse of process claim a plaintiff must plausibly allege that defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). The third element requires that a plaintiff plausibly allege an improper collateral purpose on the part of the defendant; not merely an improper motive. Savino, 331 F.3d 77-78. Here, plaintiff alleges a retaliatory motive on the part of AAG Lebron; however, he alleges no improper collateral purpose by AAG Lebron as required to state an abuse of process claim. Id.; Folk v. City of New York, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017).

### E. Defamation

The elements of a defamation claim are "(1) a false statement that is (2) negligently, at minimum, (3) published to a third party (4) without privilege or authorization, and that (5) causes harm, unless the statement is per se defamatory." Williams v. Buffalo Pub. Sch., 758 Fed. App'x 59, 64-65 (2d Cir. 2018). To avoid dismissal under Fed. R. Civ. P. 12(b)(6) a plaintiff must plausibly allege the falsity of an alleged defamatory statement. Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 245 (2d Cir. 2017). Plaintiff fails to plead sufficient

non-conclusory facts to infer that AAG Lebron's alleged statements on July 29, 2019 and October 4, 2016 (Ex. A, SAC ¶¶4-1 (pp. 49-51) were false. He thus he fails to state a claim for defamation. Further, the alleged July 29, 2019 statements are not actionable because they are statements of opinion, not capable of being proven true or false. Williams, 759 Fed. App'x at 65.

## POINT VII

### SOME OR ALL OF PLAINTIFF'S CLAIMS ARE BARRED
### BY THE APPLICABLE STATUTES OF LIMITATIONS

Plaintiff's § 1983 claims are governed by a three-year statute of limitations; his State law claims for the torts of IIED and defamation are governed by a one-year statute of limitations. Warren v. Altieri, 59 Fed. App'x 426, 427 (2d Cir. 2003); N.Y. CPLR 215. The only events plaintiff alleges that occurred within applicable limitations periods are the issuance of the August 22, 2016 Decision and Order (Ex. L); the September 23, 2016 Warrant of Commitment (Ex. M); and AAG Lebron's alleged defamatory statements on July 29, 2019. Ex. A, SAC ¶¶4-5 (p. 49). Claims based on earlier alleged events are all barred by the applicable statutes of limitations.

### CONCLUSION

For the foregoing reasons, the State Defendants respectfully request that the Court dismiss plaintiff's Second Amended Complaint in its entirety and with prejudice.

Dated: New York, New York
      January 6, 2020

                              LETITIA JAMES
                              Attorney General of the State of New York
                              Attorney for State Defendants
                              By:
                                        s/
                              _____
                              David B. Diamond
                              Assistant Attorney General
                              28 Liberty Street - 17th Floor
                              New York, New York 10005
                              Tel.: (212) 416-8476
                              david.diamond@ag.ny.gov

cc:    Edwin Rivera, plaintiff pro se (via email and UPS overnight courier)
        Joshua E. Kahane, Esq., counsel for Federal Defendants (via ECF)