UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EDWIN RIVERA,

                                        Plaintiff,

                    -v.-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, ROBERTO LEBRON,
*Assistant Attorney General*, THOMAS CIOPPA,
*District Director, United States Citizenship and
Immigration Services*, NEW YORK STATE
OFFICE OF THE ATTORNEY GENERAL,
DEPARTMENT OF JUSTICE, OFFICE OF LEGAL
ACCESS PROGRAMS, and STEVEN LANG,
*Program Director (AAG)*,

                                        Defendants.

---

19 Civ. 3101 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Edwin Rivera instituted this action against United States

Citizenship and Immigration Services ("USCIS"), Thomas Cioppa, the former

New York District Director of USCIS,[1] and Steven Lang, Program Director for

the Department of Justice's Office of Legal Access Programs ("OLAP")

(collectively, the "Federal Defendants"), as well as the New York State Office of

the Attorney General (the "OAG") and Assistant Attorney General ("AAG")

Roberto Lebron (collectively, the "State Defendants").  Plaintiff alleges a litany of

claims arising out of: (i) New York State court proceedings in which he was

---

[1]     Plaintiff erroneously identified Mr. Cioppa as the Director of USCIS, when he is in fact
        the retired New York District Director of that agency.  The Court will consider Plaintiff's
        claims to be brought against both the New York District Director and the Director of
        USCIS in their official capacities, but such consideration does not alter the Court's
        analysis.  Had this case progressed beyond the instant motions, the Court would have
        amended the caption accordingly.

barred from providing immigration services; (ii) the denial of his application to become accredited to represent clients in immigration proceedings; and (iii) the denial of certain immigrant petitions he sponsored.  For the many independent reasons set forth in the remainder of this Opinion, Plaintiff's claims are dismissed in their entirety.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    Plaintiff's Directorship of Homeward Bound Program for Children, Inc.

For purposes of these motions, the Court accepts as true the well-pleaded allegations of the Second Amended Complaint.  Plaintiff Edwin Rivera is the director of a non-profit religious organization known as the Homeward Bound Program for Children, Inc. ("HBP").  (SAC 1, 5, 16, 18, 38).  According to Plaintiff, HBP is organized under Section 501(c)(3) of the Internal Revenue Code and operates from an office located in the Bronx, New York.  (*Id.* at 7, 15-16, 38).  Out of its Bronx office, HBP holds religious services, raises funds by

---

[2]    The facts contained in this Opinion are drawn primarily from Plaintiff's second amended complaint (the "Second Amended Complaint" or "SAC" (Dkt. #39)), which is the operative pleading in this case, and the exhibits attached thereto; Plaintiff's Affidavit in Support of the Second Amended Complaint ("Pl. Aff." (Dkt. #39 at 54-62)); the Declaration of David B. Diamond in Support of the State Defendants' Motion to Dismiss ("Diamond Decl." (Dkt. #49)), and Plaintiff's Declaration in Support of His Opposition to Defendants' Motions to Dismiss ("Pl. Opp. Decl." (Dkt. #55)).

For ease of reference, the Court refers to the Federal Defendants' opening brief as "Fed. Def. Br." (Dkt. #45); the State Defendants' opening brief as "State Def. Br. (Dkt. #48); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #54); the Federal Defendants' reply brief as "Fed. Def. Reply" (Dkt. #57); and the State Defendants' Reply Brief as "State Def. Reply" (Dkt. #56).  The Court refers to the exhibits attached to the Diamond Decl. using the convention "Diamond Decl., Ex. [ ]" and refers to the exhibits attached to the SAC using the convention "SAC, Ex. [ ]".

selling accounting services, and provides services for community members that include "writing letters and filling out forms for immigration offices and for school." (*Id.* at 15-16). In his capacity as HBP Director, Plaintiff has assisted in the preparation of several immigration-related forms, several of which have been denied by USCIS and OLAP. (*See id.* at 4, 7, 20, 24, 25). Those denials are at the heart of this lawsuit.

### 2.    Plaintiff's Submission of Applications and Petitions to USCIS

On October 13, 2017,[3] Plaintiff submitted a Form EOIR-31 application to USCIS seeking to have HBP recognized as an organization authorized to represent individuals in U.S. immigration courts through an accredited representative, and a Form EOIR-31A application to have Plaintiff recognized as such an accredited representative. (SAC 7, 26-27; *id.* at Ex. 9; Pl. Aff. ¶ 16). On December 15, 2017, OLAP denied both applications.[4] (SAC 24-27; *id.* at Ex. 9; Pl. Aff. ¶ 16).

Plaintiff similarly claims that on March 23, 2018, he submitted Form I-360 petitions to USCIS on behalf of three "members" of HBP, seeking to have them classified as Special Immigrant Religious Workers under the Immigration and Nationality Act (the "INA"). (SAC 6-7, 19-20; *id.* at Ex. 8, 9, 18).[5] He

---

[3]    The dates in the Facts section are approximate.

[4]    The Court understands from the record that Plaintiff submitted the Form EOIR-31 and EOIR-31A applications to USCIS; USCIS recommended that OLAP deny the applications; and OLAP then denied the applications. (*See* SAC, Ex. 9).

[5]    In Plaintiff's original complaint (Dkt. #2) and first amended complaint (Dkt. #24), he referred to 34 Form I-360 petitions that he sponsored, which petitions were either denied or then pending before USCIS. (*See also* Dkt. #34 at 12, 26, 27). In his Second Amended Complaint, Plaintiff speaks of only three petitioners whose applications he

claims that USCIS denied the HBP members' Form I-360 petitions and then denied an appeal by one such member from the initial denial of her petition. (SAC 19; *id.* at Ex. 8, 18).

### 3. The State Defendants' Alleged Involvement in the Denial of Plaintiff's Applications and Petitions to USCIS

According to Plaintiff, the State Defendants unlawfully caused the denial of the EOIR-31 and EOIR-31A applications that he submitted to USCIS on behalf of HBP and himself, as well as the Form I-360 petitions he submitted on behalf of the three HBP members. (SAC 19-20; Pl. Aff. ¶ 16). In particular, Plaintiff claims that USCIS's recommendation that the applications be denied and OLAP's and USCIS's decisions to deny the applications and petitions improperly relied on factual findings and legal conclusions that had been set forth in a May 6, 2005 decision and order (Diamond Decl., Ex. F (the "May 6, 2005 Order")), and an October 19, 2005 judgment and order (*id.* at Ex. G (the "October 19, 2005 Judgment")), both of which had been issued in connection with a 2004 civil proceeding that AAG Lebron successfully prosecuted against Plaintiff in New York State Supreme Court, Bronx County. *See People* v. *Rivera*, Index No. 1576/2004 (Sup. Ct. Bronx Cty.) ("*People* v. *Rivera*" or the "State Court Proceeding"). (SAC 13, 44 (referencing May 6, 2005 Order); Pl. Aff. ¶¶ 16-17 (referencing May 6, 2005 Order and October 19, 2005 Judgment)).

---

sponsored. (*See* SAC 19). Specifically, Plaintiff refers to I-360 petitioners Juan Collado, Gladis Collado, and Ramona Urena. (*Id.*). Since Plaintiff appears to have abandoned the claims regarding the other 31 I-360 petitions, the Court considers Plaintiff's claims solely with respect to the three I-360 petitions discussed in the Second Amended Complaint, although its analysis would apply equally to all 34 petitions.

Because of its centrality to Plaintiff's claims, the State Court Proceeding is discussed in some detail herein.

### 4.    The OAG's Prosecution of Plaintiff

Having commenced an investigation into Plaintiff in 2004, the OAG obtained the May 6, 2005 Order and the November 18, 2005 Judgment pursuant to authority provided in New York Executive Law § 63(12).  In issuing the May 6, 2005 Order, a judge of the Bronx Supreme Court found that: (i) Plaintiff had engaged in deceptive acts and practices, including false advertising, while providing immigration services to the public, in violation of New York General Business Law §§ 349(a) and 350; and (ii) Plaintiff had engaged in the unlicensed practice of law by falsely holding himself out as an attorney in violation of New York Judiciary Law § 478.  (May 6, 2005 Order 9-11).  Additionally, the court found that in offering immigration services to the public, Plaintiff had made false representations concerning the status of unenacted federal legislation known as the Development, Relief & Education for Alien Minors Act (the "DREAM Act"),[6] and had charged numerous immigrants seeking legal residency $1,500 dollars each to submit purported DREAM Act applications on their behalves, all of which were denied by federal

---

[6]        As the State Defendants explain (*see* State Def. Br. 4 n.6), the DREAM Act legislation was first introduced by Senator Orrin Hatch in 2001.  *See* Development, Relief, and Education for Alien Minors Act, S. 1291, 107th Cong. (2001).  In its initial form, the DREAM Act would have granted lawful permanent residency to non-resident immigrant children who were at least 12 years old before the date of its enactment and who filed a DREAM Act application for lawful permanent residency before turning 21, provided they met certain residency, educational, and character conditions.  *Id.* § 3(a)(1).  The DREAM Act was not enacted in its initial form and has since been introduced in at least 20 different forms, none of which has been enacted.

immigration authorities.  (May 6, 2005 Order 4-11).  Further, Plaintiff had

falsely held himself out as an attorney in advertising, conversations, and

written immigration applications he submitted on behalf of clients to federal

immigration authorities.  (*Id.* at 9-11).  The May 6, 2005 Order directed the

OAG, as petitioner, to settle an order on notice for relief.  (*Id.*).

Pursuant to that directive, the OAG sought and obtained the

November 18, 2005 Judgment, which specified several forms of injunctive relief

against Plaintiff.  (November 18, 2005 Judgment 1-2).  Among other

proscriptions, the November 18, 2015 Judgment provided that:

> [Plaintiff] is enjoined and prohibited from engaging in
> any of the fraudulent, deceptive or illegal acts and
> practices alleged in the Amended Verified Petition in
> violation of GBL §§ 349, 350 and 130, and Judiciary
> Law § 478, including, but not limited to:
>
> (a) Holding himself out to the public as being
> entitled to practice law without being duly licensed and
> admitted to practice law in the State of New York
> including, but not limited to, maintaining a law office in
> New York; advertising that he is an attorney;
> representing orally and in writing that he is an attorney;
> appearing as an attorney-at-law in a court of record;
> and rendering legal advice;
>
> (b) Falsely advertising or otherwise
> misrepresenting any aspect of the process of adjusting
> immigration status, or any other service available in
> immigration matters;
>
> (c) Accepting money for services which he is not
> legally entitled to perform, or accepting money for
> services which he is legally entitled to perform and then
> failing to perform such services;
>
> (d) Failing to provide refunds to consumers;

(e) Directly or indirectly destroying or disposing of any records pertaining to his business; [and]

(f) Conducting a business under a name other than his real name without filing a certificate providing the name or designation under which he does business with the clerk of each county [in which] the business is conducted[.]

(*Id.*).  Other relief provisions in the November 18, 2015 Judgment directed Plaintiff to provide the OAG with a complete accounting of his consumer transactions and to pay $24,331 in restitution to the numerous consumers he had defrauded.  (*Id.*).

Plaintiff's fraudulent conduct persisted unabated.  In consequence, from late July 2008 through August 22, 2016, the OAG obtained four additional orders holding Plaintiff in criminal or civil contempt of the November 18, 2005 Judgment.  (Diamond Decl., Ex. I (the "July 29, 2008 Order"); *id.* at Ex. J (the "July 20, 2009 Order"); *id.* at Ex. K (the "October 27, 2011 Order"); *id.* at Ex. L (the "August 22, 2016 Order")).  These orders were obtained by the OAG on evidentiary showings that (i) Plaintiff was continuing to hold himself out falsely both as an individual authorized to provide immigration services and as an attorney, and (ii) Plaintiff had failed to pay the restitution previously ordered. (July 29, 2008 Order; July 20, 2009 Order; October 27, 2011 Order; August 22, 2016 Order).

In the July 29, 2008 Order, a judge of the Bronx Supreme Court held Plaintiff in criminal contempt after finding that he had continued to offer immigration services to the public while not authorized to do so by USCIS and had falsely held himself out as an attorney.  (*See* July 29, 2008 Order 4-9).

7

The court ordered sweeping injunctive relief against Plaintiff, including a directive "permanently enjoining him from offering immigration services of any kind in exchange for payment to any person in New York." (*Id.* at 1). Thereafter, in ruling on the OAG's later contempt motions, the court held that Plaintiff had violated *both* the November 18, 2005 Judgment and the July 29, 2008 Order by, among other things, continuing to offer immigration services to the public and holding himself out as an attorney. (*See* July 20, 2009 Order; October 27, 2011 Order; August 22, 2016 Order).

Pursuant to these contempt orders, the OAG obtained Warrants of Commitment for Plaintiff's arrest and incarceration. (Diamond Decl., Ex. M (warrant of commitment dated July 20, 2009); *id.* at Ex. N (warrant of commitment dated October 27, 2010); *id.* at Ex. O (warrant of commitment dated November 7, 2011); *id.* at Ex. P (warrant of commitment dated September 23, 2016)). During that time period, Plaintiff twice moved to dismiss the State Court Proceeding; both motions were denied as moot based on the May 6, 2005 Order that had determined the merits of the proceeding and Plaintiff's failure to appeal that order. *See People* v. *Rivera*, Index No. 1576/2004, 2013 WL 6822885, at *1 (Sup. Ct. Bronx Cty. Mar. 1, 2013); *People* v. *Rivera*, Index No. 1576/2004, 2013 WL 6832083, at *1 (Sup. Ct. Bronx Cty. Aug. 27, 2013), *aff'd*, 9 N.Y.S.3d 871 (1st Dep't 2015).

### 5.    Plaintiff's New York Court of Claims Action

On May 4, 2017, Plaintiff filed an action in the New York Court of Claims alleging that the Attorney General had subjected him to a false arrest on

February 16, 2017, as well as other false arrests and unlawful actions from
May 2005 through November 2011.  (*See* Diamond Decl., Ex. Q (*Rivera* v. *State
of New York*, Claim No. 129436 (N.Y. Ct. Cl. Mar. 13, 2017)); *id.* at Ex. R
(*Rivera* v. *State of New York*, Claim No. 129674 (N.Y. Ct. Cl. May 4, 2017))).[7]

     In the Court of Claims action, Plaintiff floated several allegations
concerning AAG Lebron's conduct that are renewed here, including claims that
Lebron's conduct was retaliatory for an audit Plaintiff had conducted of the
Puerto Rican Bar Association.  (*Compare* SAC 7-9, 39-40, 44-45 (allegations of
retaliatory prosecution and false arrest), *with* Diamond Decl., Ex. Q (same)).
On June 15, 2018, the Court of Claims dismissed the action based on AAG
Lebron's absolute prosecutorial immunity and Plaintiff's failure to state a cause
of action for false arrest.  (Diamond Decl., Ex. Q (*Rivera* v. *State of New York*,
Claim No. 129674 (N.Y. Ct. Cl. June 15, 2018) (the "June 15, 2018 Order")).

    **6.**    **The Denials by USCIS and OLAP**

        **a.**    **OLAP's Denial of the Form EOIR-31 and EOIR-31A
             Applications**

     Plaintiff is correct that the State Court Proceeding impacted certain of the
USCIS denials he challenges in this case.  In a written decision issued on
December 15, 2017, OLAP denied the Form EOIR-31 and EOIR-31A
applications that Plaintiff had submitted to obtain authorization for HBP to

---

[7]     Plaintiff filed Claim No. 129436 on March 17, 2017 (Diamond Decl., Ex. Q), which was
dismissed based on improper service (*id.* at Ex. S (*Rivera* v. *State of New York*, Claim
No. 129436 (N.Y. Ct. Cl. Sept. 6, 2017))).  On May 4, 2017, he filed Claim No. 129674
(Diamond Decl., Ex. R), which asserted essentially the same fact allegations (*id.* at Ex. S
at 2 & n.1).

represent individuals in U.S. immigration courts, and to have himself accredited as a representative.  (*See* SAC 24-27; *id.* at Ex. 9).  OLAP denied these applications upon recommendation from the Director of USCIS's New York District Office, citing Plaintiff's failure to demonstrate, in accordance with applicable regulations, that he possessed the "'character and fitness to represent clients before the Immigration Courts." (SAC, Ex. 9 at 1).  OLAP noted that Plaintiff had been identified by the Executive Office of Immigration Review, Fraud and Abuse Prevention Program "as a person of concern due to his history of prosecution for fraud and theft." (*Id.*).  It further noted that in October 2016, Plaintiff had been arrested and ordered to serve jail time for violating the November 18, 2005 Judgment and the July 29, 2008 Order, both of which enjoined him from providing immigration services to the public and directed him to pay restitution.  (*Id.*).

> **b.  USCIS's Denial of the Three HBP Members' Form I-360 Petitions**

On March 7, 2019, USCIS denied two of the three Form I-360 petitions Plaintiff submitted on behalf of HBP members to have them classified as Special Immigrant Religious Workers.  (*See* SAC, Ex. 8 & 9).  USCIS cited the following three grounds for the denials: (i) the petitioners were not employed in "qualifying positions" based on applicable INA regulations; (ii) the petitioners did not have sufficient "qualifying work experience" under applicable INA regulations; and (iii) a "compliance review" that USCIS had conducted of HBP's operations pursuant to INA regulations, revealed that while the November 18, 2005 Judgment had ordered Plaintiff "to stop engaging in the unlawful practice

of immigration law and pay $24,331.00 [in restitution] to the [OAG]," records

maintained by USCIS indicated that Plaintiff or HBP had been listed on

applications submitted to USCIS since that Judgment was issued.  (*Id.*).[8]

### 7. Plaintiff's Factual Allegations Concerning the State Defendants' Unlawful Conduct

To review, Plaintiff contends that the May 6, 2005 Order and the

November 18, 2005 Judgment in the State Court Proceeding were both based

on false allegations by AAG Lebron and are therefore void.  (SAC 7-9, 50-51).

More specifically, he insists that AAG Lebron's prosecution was founded on

fabricated allegations and pursued in retaliation for an audit Plaintiff

conducted of the Puerto Rican Bar Association, during which he uncovered

evidence of misappropriated funds for which AAG Lebron was allegedly

responsible.  (*Id.* at 7-9, 13-14, 39-40, 44-45).

Plaintiff further claims that he was subjected to unspecified false arrests

based on the warrants of commitment that the OAG obtained in the State

Court Proceeding, which arrests he contends were based on the false

information AAG Lebron allegedly presented to obtain the May 6, 2005 Order.

(SAC 13-14, 44-46).  He also claims that in violation of his due process rights,

neither he nor his attorney ever received notice of procedural events in the

State Court Proceeding.  (*Id.* at 8, 44).

---

[8]     The third HBP member's Form I-360 petition was apparently denied by USCIS on September 11, 2019, on the first two of the foregoing grounds, but not the third.  (SAC, Ex. 18).

Separately, Plaintiff alleges that statements made by AAG Lebron publicly defamed Plaintiff in his "business and trade as an accounting contractor." (SAC 49-50). Specifically, he alleges that on July 29, 2019, in the presence of an attorney named Anibal Romero, AAG Lebron stated: "[Plaintiff] is under investigation and he will be arrested with the cooperation of each Religious Worker." (*Id.* at 49 (italics omitted)). Plaintiff similarly claims that on or around the same date, AAG Lebron stated to an unspecified number of apparently disgruntled religious workers employed by HBP: "You must come to our office to help keep Rivera in prison for a long time." (*Id.* (italics omitted)). And Plaintiff alleges that on October 4, 2016, AAG Lebron made the false and defamatory statement that "[t]hough [his] business was billed as an accounting office, Rivera advertised himself as an attorney with more than 30 years of experience, targeting undocumented immigrants looking to legalize their status[.]" (*Id.* at 50 (italics omitted)).[9]

### 8.  Plaintiff's Factual Allegations Concerning the Federal Defendants' Unlawful Conduct

With respect to the Federal Defendants, Plaintiff principally alleges that the I-360 petitions he sponsored and the EOIR-31 and EOIR-31A applications he submitted were improperly denied by USCIS and OLAP because of the

---

[9]     In alleging that AAG Lebron made this statement, Plaintiff appears to quote an October 4, 2016 news article that reported on both his arrest on October 3, 2016, and the August 22, 2016 Order holding him in civil and criminal contempt. (*Compare* SAC 50, *with* Nathan Tempey, *Serial Scammer Jailed for Posing as an Immigration Lawyer*, Gothamist (Oct. 4, 2016), https://gothamist.com/news/serial-scammer-jailed-for-posing-as-an-immigration-lawyer). Of potential note, the article actually attributed the cited statement to the OAG.

OAG's arrests of Plaintiff.  (SAC 7, 20, 25-27, 38, 43, 46).  Consequently, Plaintiff demands reversal of all the denials of petitions and applications that he filed with USCIS and OLAP.  (*See id.* 24, 47).  Plaintiff also claims that the Federal Defendants are liable for intentional infliction of emotional distress, negligence and breach of duty, and violations of his constitutional rights that can be vindicated under 42 U.S.C. § 1983 and 5 U.S.C. § 702.

## B.   Procedural History

Plaintiff filed the original complaint in this action on April 8, 2019.  (Dkt. #2).  On July 17, 2019, the State Defendants filed a pre-motion letter concerning their anticipated motion to dismiss the original complaint.  (Dkt. #12).  On August 5, 2019, after noting that Plaintiff failed to serve the complaint on the Federal Government as required under Rule 4(i)(1), the Federal Defendants filed a pre-motion letter to dismiss the complaint.  (Dkt. #22).

On August 8, 2019, Plaintiff filed an amended complaint, which was substantively identical to his prior complaint but re-characterized his original Title VII claims as Fifth Amendment due process claims.  (*See* Dkt. #24).  Following another round of pre-motion letters to dismiss by the State and Federal Defendants (*see* Dkt. #25, 28), the Court held a pre-motion conference on August 15, 2019 (*see* Dkt. #34 (transcript)).  There, Plaintiff explained his allegations and grievances to the Court.  (*See generally id.*).  At the end of the conference, Plaintiff asked for leave to amend his complaint.  (*See id.* at 42).  The Court granted Plaintiff leave to file a second amended complaint and set a

briefing schedule for the Federal and State Defendants' motions to dismiss. (*Id.* at 42-45; *see also* Dkt. #29).

Plaintiff filed his Second Amended Complaint on October 18, 2019.  (Dkt. #39).  On January 6, 2020, the State Defendants and Federal Defendants filed their respective motions to dismiss.  (*See* Dkt. #44-49).  Plaintiff filed a brief and declaration opposing the motions to dismiss on February 24, 2020.  (Dkt. #54-55).  The State and Federal Defendants filed their reply briefs on March 13, 2020, and March 16, 2020, respectively.  (Dkt. #56-57). Accordingly, the motions to dismiss are ripe for the Court's review.

## DISCUSSION

### A.    Applicable Law

#### 1.     Motions to Dismiss Under Rule 12(b)(1)

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it."  *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Sokolowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

"Subject-matter jurisdiction is a threshold issue that must be addressed prior to the merits."  *Allen* v. *N.Y.C. Hous. Auth.*, No. 15 Civ. 173 (ALC), 2016 WL 722186, at *4 (S.D.N.Y. Feb. 19, 2016).  Federal courts have original

jurisdiction over civil actions in which the parties have diversity of citizenship and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  This is known as diversity jurisdiction, as contrasted with jurisdiction based on the existence of a federal question.  *See* 28 U.S.C. § 1331.  Diversity jurisdiction requires complete diversity between the parties, meaning that no plaintiff has the same citizenship as any defendant.  *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

On a Rule 12(b)(1) motion, the challenge to subject matter jurisdiction may be facial or fact-based.  *Carter* v. *Healthport Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).  When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that" subject matter jurisdiction exists.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  For purposes of a Rule 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction.  *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC* v. *Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  In contrast, to support a fact-based Rule 12(b)(1) challenge, a defendant may proffer evidence beyond the pleadings.  *Carter,* 822 F.3d at 56-57 (citing *Amidax*, 671 F.3d at 145).  To oppose such a motion, a plaintiff must present controverting evidence "if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems" with respect to jurisdiction.

*Id.* (quoting *Exchange Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### 2.    Motions to Dismiss Under Rule 12(b)(6)

When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal quotation marks omitted).  A plaintiff will survive a motion to dismiss if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks, brackets, and citation omitted)).

16

### 3.    The Court's Review of *Pro Se* Submissions

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special

solicitude[,]" and, in this regard, will liberally construe his pleadings and

motion papers.  *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Under

this directive, the Court is to read Plaintiff's "'submissions to raise the

strongest arguments they suggest.'"  *McLeod* v. *Jewish Guild for the Blind*, 864

F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489,

491 (2d Cir. 2007)).

## B.    Analysis

### 1.    Overview of Plaintiff's Claims

Plaintiff appears to advance six claims, each labeled as a "Cause of

Action."  (SAC 20-25 (intentional infliction of emotional distress); *id.* at 25-38

(negligence and breach of duty); *id.* at 38-43 (malicious prosecution); *id.* at 43-

46 (malicious prosecution and abuse of process); *id.* at 46-48 (equal protection

and due process); *id.* at 48-51 (defamation)).  The first, third, fourth, and sixth

causes of action appear to be asserted against the State Defendants.  (*See id.* at

20-25, 38-46, 48-51).  The first, second, fourth, and fifth causes of action

appear to be asserted against the Federal Defendants.  (*See id.* at 20-38, 43-

48).[10]

---

[10]    Plaintiff's opposition brief largely fails to respond to the arguments raised by
Defendants in their motions.  Rather, Plaintiff focuses almost entirely on complaints
concerning the purported management of the OAG and the condition of certain
unidentified facilities.  (*See, e.g.,* Pl. Opp. 22 ("The stark mismatch that NYSAG's
management resources and the size of its staff has had predictably disastrous
consequences: a substantial number of unsupervised cases, inadequate management
care, failure to provide the basic hoof and proper supervision that AAG's require, AAGs

Plaintiff's first cause of action is a claim for "Intentional Infliction of Emotional Distress" against both the State and Federal Defendants.  (SAC 20-25).  In support of this claim, Plaintiff contends that AAG Lebron has threatened Plaintiff "with false allegations and false arrests since 2004."  (*Id.* at 21).  He explains that in February 2015, the Immigration Assistance Provider program went into effect as law in New York, which required immigration preparers to post a $50,000 bond and undertake other actions.  (*Id.* at 22).  In light of this law, Plaintiff's application to become an immigration preparer was denied, due to the allegations made against him by AAG Lebron.  (*Id.* at 23).  Plaintiff contends that, had the Federal Defendants actually read the proceedings before the Court of Claims, the Form I-360 petitions and Form EOIR-31 application would not have been denied.  (*Id.* at 24).  Plaintiff seeks equitable relief in the form of a Court order reversing the denials by OLAP and USCIS of the applications and petitions he submitted to USCIS.  (*Id.*).

Plaintiff's second cause of action, alleged against the Federal Defendants, is for negligence and breach of duty.  (SAC 25).  Essentially, Plaintiff claims

---

going without proper training and legal responsibility."); *id.* at 26 ("NYAG's substandard spending places an enormous strain on its facilities, which must find ways to supplement NYAG's services in order to provide the proper care to the cases."); *id.* at 33 ("NYAG is chronically insolvent and remains significant in arrears to its mission, which depends on the need of serving the public.")).  Even if the Court were to consider these allegations, which appear nowhere in his SAC, Plaintiff cites no authority supporting his ability to bring a private right of action for the relief he seeks, including changes to the management of the OAG and the supervision of Assistant Attorneys General.  (*See, e.g.*, *id.* at 39 ("The plaintiffs seek to remove several AAGs 'for cause'[.]")).  "[F]ederal courts have no general power to compel action by state officials." *Davis* v. *Lansing*, 851 F.2d 72, 74 (2d Cir. 1988).  Further, any claims based on purported mismanagement and neglect, and any attempts to relitigate decisions rendered in the State Court Proceeding, would be barred for the many reasons set forth in the text.

that USCIS failed to conduct a sufficiently thorough factual investigation before submitting a report to OLAP recommending the denial of the EOIR-31 and EOIR-31A applications.  (*Id.* at 25-27).  He contends that USCIS should have suspended or "de-energize[d]" certain unidentified provisions of the New York City Department of Consumer Affairs law and/or regulations applicable to immigration form preparers.  (*Id.* at 31; *see also id.* at 23).

Plaintiff's third and fourth causes of action appear to be brought under 42 U.S.C. § 1983 against the State and Federal Defendants.  His third cause of action appears to advance claims for money damages against the State Defendants for AAG Lebron's supposed malicious prosecution of the State Court Proceeding based on false allegations, and violations of Plaintiff's due process rights based AAG Lebron's supposed failure to provide Plaintiff with adequate notice of the proceeding.  (SAC 38-43).  Relying on similar factual allegations, Plaintiff's fourth cause of action (*id.* at 43-46) appears to assert claims for malicious prosecution and abuse of process under § 1983 against both the State and Federal Defendants.  On this claim, Plaintiff seeks equitable relief in the form of an order invalidating the May 6, 2005 Order, the November 18, 2005 Judgment, and the other orders in the State Court Proceeding, and possibly money damages.  (*Id.* at 43-46; *see id.* at 52).

Plaintiff's fifth cause of action appears to assert claims under § 1983 and 5 U.S.C. § 702 alleging that the Federal Defendants violated his equal

protection[11] and due process rights in denying the I-360 petitions. (SAC 46-47). Similar to his second cause of action, Plaintiff seeks equitable relief on the claim in the form of a Court order reversing the denials by OLAP and USCIS of the applications and petitions he submitted to USCIS. (*Id.* at 46-48).

Finally, Plaintiff's sixth cause of action appears to assert a state-law defamation claim against the State Defendants, based on statements made by AAG Lebron concerning the State Court Proceeding. (SAC 48-51). On this claim, Plaintiff seeks money damages and equitable relief against the State Defendants in the form of an order enjoining them from obtaining warrants for his arrest going forward for violations of the November 18, 2005 Judgment and the July 29, 2008 Order. (*Id.* at 50-51).

### 2. Plaintiff's Claims Against the OAG and His Damages Claims Against AAG Lebron in His Official Capacity Are Barred by the Eleventh Amendment

All of Plaintiff's claims against the OAG, and all of his claims for damages against AAG Lebron in his official capacity, must be dismissed. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]" *Gollomp* v. *Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state

---

[11] This is the only one of Plaintiff's claims that he actually addresses in his brief in opposition to the motions to dismiss. (*See* Pl. Opp. 8-11; *id.* at 13-14 ("Mr. Rivera and the other Religious Workers were terminated from the said program solely because of their alienage.")). However, in light of Plaintiff's *pro se* status, the Court will consider the remaining claims and not deem them to have been abandoned by Plaintiff.

instrumentalities that are, effectively, arms of a state." *Id.* Thus, Eleventh Amendment immunity applies to state officials sued in their official capacities. *Pennhurst State School & Hosp.* v. *Halderman*, 465 U.S. 89, 101-02 (1984).

The OAG is unquestionably an arm of the State of New York for purposes of Eleventh Amendment immunity. *See Morgan* v. *NYS Attorney Gen.'s Office*, No. 11 Civ. 9389 (PKC) (JLC), 2013 WL 491525, at *11 (S.D.N.Y. Feb. 8, 2013) (noting that Eleventh Amendment immunity "extends to 'arms of the state,' such as the OAG, as well as to its officials sued in their official capacities for money damages"); *Sutherland* v. *NYS Dep't of Law*, No. 96 Civ. 6935 (JFK), 1999 WL 314186, at *5 (S.D.N.Y. May 19, 1999) (holding that the Eleventh Amendment barred plaintiff's § 1983 claims against the OAG and against the Attorney General in his official capacity), *aff'd on other grounds*, 216 F.3d 1073 (2d Cir. 2000). Further, Eleventh Amendment immunity for the OAG extends to its officials when sued in their official capacities for money damages. *Morgan*, 2013 WL 491525, at *11; *Sutherland*, 1999 WL 314186, at *5.

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman* v. *Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Those of Plaintiff's claims asserted against the State Defendants are barred as against the OAG based on the agency's Eleventh Amendment immunity. *Morgan*, 2013 WL 491525, at *11; *Sutherland*, 1999 WL 314186, at *5. Likewise, those of Plaintiff's claims seeking damages against AAG Lebron in his official capacity are also barred by the Eleventh

21

Amendment.  *Morgan*, 2013 WL 491525, at *11; *Sutherland*, 1999 WL 314186,

at *5.  Accordingly, all of Plaintiff's claims against the OAG, and his damages

claims against AAG Lebron in his official capacity, must be dismissed pursuant

to Fed. R. Civ. P. 12(b)(1).

### 3. Most, If Not All, of Plaintiff's Claims Against the State Defendants Are Barred by the *Rooker-Feldman* Doctrine

Separate and apart from these Eleventh Amendment flaws, Plaintiff's

claims against the State Defendants suffer from other defects, including

preclusion under the *Rooker-Feldman* doctrine.  That doctrine bars federal

courts from hearing claims "'brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of

those judgments.'"  *Hoblock* v. *Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d

Cir. 2005) (quoting *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005)).  In other words, under the *Rooker-Feldman* doctrine, "federal

district courts lack jurisdiction over cases that essentially amount to appeals of

state court judgments, including claims that are inextricably intertwined with a

prior determination of a state court."  *Rountree* v. *U.S. Bank NA*, No. 15 Civ.

9018 (KPF), 2017 WL 31405, at *7 (S.D.N.Y. Jan. 3, 2017) (internal quotation

marks and citations omitted).  The Second Circuit has delineated four

requirements for the application of *Rooker-Feldman*: (i) "the federal-court

plaintiff must have lost in state court"; (ii) "the plaintiff must complain of

injuries caused by a state court judgment"; (iii) "the plaintiff must invite district

court review and rejection of that judgment"; and (iv) "the state-court judgment

must have been rendered before the district court proceedings commenced."
*Hoblock*, 422 F.3d at 85 (internal quotation marks and alterations omitted).

All of the *Rooker-Feldman* requirements are met here with respect to
three, if not all four, of Plaintiff's claims against the State Defendants. *First*, it
is indisputable that Plaintiff was the losing party in the State Court Proceeding.
(Pl. Aff. ¶¶ 16-17 (Plaintiff's acknowledgment of the orders entered against him
in *People* v. *Rivera*); *see also* May 6, 2005 Order; November 18, 2005
Judgment). *Second*, Plaintiff's first three claims against the State Defendants
allege injuries caused by either the May 6, 2005 Order, the November 18, 2005
Judgment, or the correlative contempt orders. (SAC 7-10, 39-46).[12] *Third*,
Plaintiff's allegations in the SAC and statements in his affidavit in support
thereof, repeatedly invite this Court to review and reverse the May 6, 2005
Order and November 18, 2005 Judgment. (*See* SAC 41-43, 44-51; Pl. Aff. ¶¶ 3-
19). *Fourth*, and finally, the May 6, 2005 Order and the November 18, 2005
Judgment were entered in the State Court Proceeding well before Plaintiff
commenced this action on April 8, 2019. (*Compare* May 6, 2005 Order and
November 18, 2005 Judgment, *with* Dkt. #1, 2 (Civil Cover Sheet and
Complaint dated April 8, 2019)). Further, Plaintiff's motions to dismiss the
State Court Proceeding, and his unsuccessful appeal of the New York State

---

[12]     Insofar as Plaintiff's sixth claim is for defamation under New York law based on
statements AAG Lebron allegedly made on July 29, 2019, and October 4, 2016 (*see*
SAC 49-51), the claim may elude application of the *Rooker-Feldman* doctrine if and to
the extent that Plaintiff (i) is contending that the statements and his resultant injuries
were not caused by orders in the State Court Proceeding and (ii) is not seeking review
and reversal of orders entered in that proceeding.

Supreme Court's order denying one such motion, were all decided years before he initiated this action.  *See Rivera*, 2013 WL 6822885, at *1; *Rivera*, 2013 WL 6832083, at *1.

The *Rooker-Feldman* doctrine thus bars at least Plaintiff's claims for intentional infliction of emotional distress, malicious prosecution, and abuse of process in this action because Plaintiff is a quintessential "state-court loser" complaining of injuries caused by earlier orders in the State Court Proceeding that he now seeks to have this Court review and overturn.  The Court therefore lacks subject matter jurisdiction over at least the first three of Plaintiff's claims against the State Defendants, and they must be dismissed on this independent basis pursuant to Fed. R. Civ. P. 12(b)(1).

### 4. Most, If Not All, of Plaintiff's Claims Against the State Defendants Are Barred by Claim Preclusion

A related, but analytically distinct, basis of dismissal is claim preclusion. Also known as *res judicata*, claim preclusion bars relitigation in a later lawsuit of claims that a plaintiff brought or could have brought in an earlier lawsuit. The law of the jurisdiction in which the earlier action took place governs the principle of claim preclusion.  *Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *4 (S.D.N.Y. June 26, 2015); *see also Simmons* v. *Trans Express Inc.*, 955 F.3d 325, 328 (2d Cir. 2020) (citing *Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)), *certified question accepted*, 35 N.Y.3d 966 (2020).  Thus, New York's preclusion law determines whether Plaintiff's state action bars litigation of the present action.  *Giannone* v. *York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008).

"New York has adopted a 'transactional approach' to claim preclusion pursuant to which, [o]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction are barred." *McKithen* v. *Brown*, 481 F.3d 89, 103-04 (2d Cir. 2007) (internal quotations and citations omitted); *accord Hoblock*, 422 F.3d at 93.  In this approach, claim preclusion applies "if [i] there is a previous adjudication on the merits; [ii] the previous action involved the party against whom [claim preclusion] is invoked or its privy; and [iii] the claims involved were or could have been raised in the previous action." *Swiatkowski* v. *Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (internal quotation marks and alternation omitted), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (summary order); *see also People ex rel. Spitzer* v. *Applied Card Sys.*, 11 N.Y.3d 105, 122 (2008).

"Under New York law, orders and judgments are given preclusive effect even if they are not formally 'final judgments' or if they were never appealed." *Truong* v. *Truong*, Nos. 03 Civ. 3423 (PKC), 03 Civ. 3424 (PKC), 03 Civ. 3425 (PKC), 2007 WL 415152, at *10 (S.D.N.Y. Feb. 5, 2007).  Further, under New York law, claim preclusion "applies to defenses that could have been raised in the prior action as well." *Swiatkowski*, 745 F. Supp. 2d at 171.  "Thus, *res judicata* prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided." *Id.*

Here, as with the *Rooker-Feldman* doctrine, the elements of claim preclusion are met for at least the first three of Plaintiff's claims against the

State Defendants.[13]  *First*, there has been an adjudication on the merits in the State Court Proceeding, as set forth in the May 6, 2005 Order and the November 18, 2005 Judgment.  Likewise, there have been prior adjudications on the merits of the contempt motions brought against Plaintiff based on his violations of the November 18, 2005 Judgment and the July 29, 2008 Order. And in Plaintiff's Court of Claims action, there has been a prior adjudication on the merits of his false arrest and other claims for money damages.  (*See* Diamond Decl., Ex. Q).

*Second*, the State Court Proceeding involved the same parties or those in privity with them as in this action.  Namely, in the State Court Proceeding, Plaintiff was the respondent, the OAG was the petitioner, and Plaintiff alleges that AAG Lebron prosecuted the proceeding as the OAG's agent.  (SAC 7-11). *See Krepps* v. *Reiner*, 377 F. App'x 65, 68 (2d Cir. 2010) (summary order) (finding defendant in privity with party in prior action because he "was an employee acting within the scope of his employment in connection with the matter [] at issue"); *Robinson* v. *Cusack*, No. 05 Civ. 5318 (DLI) (JMA), 2007 WL 2028112, at *6 (E.D.N.Y. July 11, 2007) ("[P]rivity includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party[.]" (internal quotation marks omitted)).  Likewise, Plaintiff's Court of Claims action

---

[13]   Insofar as Plaintiff's sixth claim is for defamation under New York law based on statements AAG Lebron allegedly made on July 29, 2019 (SAC 49-50), it is possible that the claim is not barred by the doctrine of claim preclusion; the alleged conduct post-dates all orders entered in the State Court Proceeding and the dismissal of Plaintiff's Court of Claims action.

involved the same parties to this action and the same bases.  (*See* Diamond Decl., Ex. Q).

Finally, Plaintiff's affirmative claims in this action were or could have been raised as procedural or merits defenses, or as affirmative counterclaims in the State Court Proceeding.  *See Swiatkowski*, 745 F. Supp. 2d at 171-72. Similarly, his damages claims in this action were or could have been raised in his Court of Claims action.  *See id.*  In point of fact, Plaintiff raised many of the allegations that underlie his affirmative claims in this action as procedural and merits defenses in the State Court Proceeding, and all were deemed meritless. (*E.g.*, Diamond Decl., Ex. F at 8 ("Respondent argued that petitioner's translation of his advertisements into English was inaccurate."); *id.* at Ex. I at 7 ("Rivera stated [] that [AAG Lebron] is motivated by personal animus against him."); *id.* at Ex. J at 5 ("Rivera stated he never had the opportunity to be heard by the court before the November 18, 2005 order was issued and that [AAG Lebron] is merely retaliating against him.")).  The same is true of Plaintiff's Court of Claims action and his damages claims in this case.  (*Id.* at Ex Q).

On this third basis, Plaintiff's claims for intentional infliction of emotional distress, malicious prosecution, and abuse of process should be dismissed against the State Defendants pursuant to Fed. R. Civ. P. 12(b)(6).  *See Thompson* v. *Cty. of Franklin*, 15 F.3d 245 (2d Cir. 1994) (noting that claim preclusion challenges are properly raised by motion under Rule 12(b)(6)).

### 5.   Plaintiff's Damages Claims Against AAG Lebron Are Barred by Absolute Prosecutorial Immunity

Another basis for dismissal exists specifically for Defendant Lebron. Prosecutors acting within the scope of their duties are entitled to absolute immunity.  *Cornejo* v. *Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citing *Imbler* v. *Pachtman*, 424 U.S. 409, 430 (1976)).  This immunity extends to actions taken "in initiating a prosecution and in presenting the State's case," *Smith* v. *Garretto*, 147 F.3d 91, 94 (2d Cir. 1998), and in taking further actions relating to their advocacy function, *Newton* v. *City of New York*, 566 F. Supp. 2d 256 (S.D.N.Y. 2008).  *See also Peay* v. *Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (holding that a prosecutor is entitled to absolute immunity, despite allegations of misconduct); *Fields* v. *Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process....  This protection extends to the decision to prosecute as well as the decision not to prosecute.").  Absolute immunity "accords protection from any judicial scrutiny of the motive for and reasonableness of official action, even where the challenged conduct was motivated by a wrongful motive or even malice." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95-96 (2d Cir. 2007) (internal quotation marks and citations omitted).  This absolute immunity shields a prosecutor from damages claims in his individual capacity to the extent the conduct for which immunity is claimed was integral to his prosecutorial functions.  *Shmueli* v. *City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well-established that a

state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." (internal quotation marks and citations omitted)).

Collectively, Plaintiff's first, third, fourth, and sixth causes of action appear to assert claims against AAG Lebron under New York State law or 42 U.S.C. § 1983 for intentional infliction of emotional distress, malicious prosecution, abuse of process, and defamation.  (SAC 7-10, 39-43, 43-46, 48-51).  These claims are founded on allegations that AAG Lebron: (i) prosecuted the State Court Proceeding against Plaintiff based on false allegations and for retaliatory reasons; (ii) threatened Plaintiff with arrest; (iii) failed to "de-energize" enforcement of purportedly applicable law and regulations; (iv) failed to provide Plaintiff with adequate notice of the State Court Proceeding; (v) obtained warrants of commitment pursuant to which Plaintiff was arrested; and (vi) disseminated statements about Plaintiff's unlawful actions.  (*Id.*).  All of these claims allege conduct by AAG Lebron that is within the ambit of his prosecutorial functions and he is thus entitled to absolute immunity on these claims.  *See, e.g.*, *Shmueli*, 424 F.3d at 238 (finding that absolute immunity barred claims against prosecutors for alleged malicious prosecution of plaintiff for crimes they knew she did not commit and intentional delay of proceedings to harass her); *Bernard* v. *Cty. of Suffolk*, 356 F.3d 495, 503-05 (2d Cir. 2004) (finding that absolute immunity shielded prosecutors for alleged malicious or selective prosecution without probable cause, knowingly presenting false evidence, and withholding exculpatory evidence); *Doe* v. *City of Bridgeport*,

29

No. 04 Civ. 1197 (WWE), 2006 WL 905361, at *4 (D. Conn. Apr. 5, 2006)

(finding that absolute immunity barred claims that prosecutors wrongfully

issued re-arrest warrant, falsely assured plaintiff re-arrest warrant was

vacated, and conspired to defame plaintiff); *see generally Ogunkoya* v.

*Monaghan*, 913 F.3d 64 (2d Cir. 2019).[14]

### 6.   Certain of Plaintiff's Claims Against the State and Federal Defendants Are Barred by the Applicable Statutes of Limitations

Plaintiff's § 1983 claims are governed by a three-year statute of

limitations; his state-law claims for the torts of intentional infliction of

emotional distress and defamation are governed by a one-year statute of

limitations.  *Warren* v. *Altieri*, 59 F. App'x 426, 427 (2d Cir. 2003) (summary

order); N.Y. C.P.L.R. § 215.  The only events that Plaintiff alleges occurred

within applicable limitations periods are the issuance of the August 22, 2016

Order and the September 23, 2016 Warrant of Commitment (Diamond Decl.,

Ex. P), and AAG Lebron's alleged defamatory statements on July 29, 2019.

(SAC 49).  Therefore, Plaintiff's claim against the State Defendants for

intentional infliction of emotional distress is time-barred.  Further, Plaintiff's

§ 1983 claims against the State Defendants for abuse of process and malicious

---

[14]     "[Section] 1983 may support claims against prosecutors for actions taken outside their role as advocates for the government, such as speaking to the press."  *Mosley* v. *McIntosh*, No. 08 Civ. 9635 (PKC), 2009 WL 1542546, at *3 (S.D.N.Y. May 29, 2009); *see Hickey* v. *City of New York*, No. 01 Civ. 6506 (GEL), 2002 WL 1974058, at *4 (S.D.N.Y. Aug. 26, 2002).  The statements here were made outside of court, but they were made during the course of an investigation into Plaintiff's continued provision of immigration services.  (*See* SAC 49-51).  Even if the lower standard of qualified immunity were to apply, the Court would still dismiss this claim, as Plaintiff has not adequately alleged that any of the challenged statements was untrue.

prosecution, to the extent they are based on the OAG's prosecution of Plaintiff in *People* v. *Rivera* and the first three warrants of commitment, are also time-barred.  Finally, Plaintiff's claims for defamation arising from AAG Lebron's statements prior to April 2, 2018, such as AAG Lebron's October 4, 2016 statement about Rivera targeting undocumented immigrants (*see* SAC 49-51), are time-barred.

> ### 7.    The SAC Fails to State a Claim
>
> #### a.    The SAC Fails to State a Claim for Wrongful Denial Against the Federal Defendants

In addition to the above-described pleading defects, Plaintiff also fails to state a claim.  Beginning with Plaintiff's causes of action against the Federal Defendants, the Court observes as to each that the primary relief Plaintiff is seeking appears to be the reversal of USCIS's denials of the three I-360 petitions and OLAP's denial of his Form EOIR-31 and EOIR-31A applications. (*See* SAC 24, 47).  While couched in differing legal theories, Plaintiff's chief argument appears to be that his previous entanglements with the judicial system amount to illegitimate arrests and void judgments; that the denials of the I-360s and the EOIR-31 and EOIR-31A applications improperly relied on those entanglements; and that the denials are therefore illegitimate as well. (*See id.* at 7, 20, 25-27, 38, 43, 46).  Irrespective of the legal theory, Plaintiff's claims of wrongful denial fail.

As an initial matter, both USCIS and OLAP were well within their rights to rely on the valid judgments entered against Plaintiff, as well as his criminal record.  Plaintiff has repeatedly attempted to relitigate the May 5, 2005 Order

to no avail.  *See, e.g., Rivera*, 9 N.Y.S.3d at 871 ("[T]his appeal is an improper attempt to relitigate the May 2005 order, and the time to seek reargument of that order has long since passed.").  And as explained above, the Court does not have jurisdiction to review such state court judgments, and it is improper for Plaintiff to seek same in this Court.  *See Miran* v. *Solomon*, No. 15 Civ. 6133 (MAT), 2019 WL 5694225, at *3 (W.D.N.Y. Nov. 4, 2019) (collecting cases holding that Rule 60(b)(4) does not permit a federal district court to render the judgment of a state court void).  Plaintiff has presented no reasons why OLAP and USCIS would not be permitted to consider, or rely on, facially valid state proceedings in making their determinations.

Further, Plaintiff fails to show why OLAP's disapproval of his EOIR-31 and EOIR-31A applications was based on anything other than legally permissible grounds.  In its disapproval, OLAP explained that all "applications for accreditation must include proof that an individual 'has the character and fitness to represent clients before the Immigration Courts and the Board, or DHS, or before all three authorities.'"  (SAC, Ex. 9 (quoting 8 C.F.R. § 1292.12(a)(1))).  "An applicant's character and fitness is evaluated by 'an examination of factors such as: Criminal background; prior acts involving dishonesty, fraud, deceit, or misrepresentation; past history of neglecting professional, financial, or legal obligations."  8 C.F.R. § 1292.12(a)(1).  In denying Plaintiff's applications, OLAP explained that Plaintiff was "a person of concern due to his history of prosecution for fraud and theft," citing "[r]ecords show[ing] that as recently as October 2016, Mr. Rivera was arrested and

32

ordered to serve jail time for violating a court order to pay restitution to the victims of his fraudulent practices and for continuing to provide immigration legal services despite a court order banning him from providing such services." *Id.*[15]  The State Court Proceeding is exactly the type of evidence OLAP is instructed to consider in deciding whether to approve or deny EOIR-31 and EOIR-31A applications.

It was also permissible for USCIS to consider the State Court Proceeding in adjudicating the I-360 petitions:

> The supporting evidence submitted may be verified by USCIS through any means determined appropriate by USCIS, up to and including an on-site inspection of the petitioning organization.  The inspection may include a tour of the organization's facilities, an interview with the organization's officials, a review of selected organization records relating to compliance with immigration laws and regulations, and an interview with any other individuals or review of any other records that the USCIS considers pertinent to the integrity of the organization.  An inspection may include the organization headquarters, satellite locations, or the work locations planned for the applicable employee.  If USCIS decides to conduct a pre-approval inspection, satisfactory completion of such inspection will be a condition for approval of any petition.

---

[15]    Further, OLAP is entitled to disapprove of applicants who have criminal records, and courts routinely dismiss complaints challenging OLAP's accreditation procedure when the application has been denied because the applicant has a felony conviction.  *See, e.g.*, *Davila* v. *Gutierrez*, 330 F. Supp. 3d 925, 942 (S.D.N.Y. 2018) ("Because the plain language of the applicable regulation … allows OLAP to terminate a person who has been convicted of a felony, and OLAP terminated [plaintiff] because he was convicted of a felony … the Court concludes that OLAP examined the relevant data and articulated a satisfactory explanation for its action."); *Davila* v. *Lang*, 343 F. Supp. 3d 254, 277 (S.D.N.Y. 2018) (same).  Plaintiff has already admitted to this Court that he has also been convicted of a federal immigration offense unrelated to the forms and arrests described in the complaint.  (*See* Dkt. #34 at 38:22-24).

8 C.F.R. § 204.5(m)(12).  It is pursuant to this regulation that USCIS

considered the State Court Proceeding in issuing notices of intent to deny Juan

Collado Tejada's and Gladis Collado's I-360 petitions.  (*See* SAC, Ex. 8 & 9).  In

so doing, USCIS relied on legally permissible grounds.  And, in any event,

USCIS articulated reasons on the merits for the notices of intent to deny the I-

360 petitions that were unrelated to Plaintiff's arrests and judgments.[16]  Thus,

Plaintiff fails to state a claim premised on OLAP's denial of his EOIR-31 and

EOIR-31A applications and USCIS's denials of the I-360 petitions for which

Plaintiff served as sponsor.

### b. The SAC Fails to State a Claim Under 42 U.S.C. § 1983 Against the State and Federal Defendants

Plaintiff also fails to state a claim against any Federal Defendant under

42 U.S.C. § 1983.  (*See* SAC 43-48).  To begin, § 1983 only applies to

constitutional violations committed by state actors, not federal actors.  *See*

*Grant* v. *United States*, No. 17 Civ. 2172 (PGG), 2018 WL 3574865, at *3

(S.D.N.Y. July 25, 2018); *see also Lubrano* v. *United States*, 751 F. Supp. 2d

453, 455 (E.D.N.Y. 2010) ("Based on the statute's reference to state actors, it is

well-settled that Section 1983 does not provide an avenue to assert causes of

action against the federal government or its agents."); *Weise* v. *Syracuse*

*University*, 522 F.2d 397, 404 (2d Cir. 1975) ("[Section] 1983 and its

---

[16]     Plaintiff also refers to the denial of Raymond Urena's I-360 petition.  (SAC 19).  But as
Plaintiff concedes in the SAC, Urena's petition was denied because "the beneficiary did
not possess the two years' experience required."  (*Id*.).  USCIS's decision denying
Urena's petition is not based, in whole or in part, on Plaintiff's State Court Proceeding.
(*See* SAC, Ex. 18).

jurisdictional counterpart, 28 U.S.C. § 1343(3), have no applicability to federal action.'").

But even were the Court to construe the Second Amended Complaint as raising claims pursuant to *Bivens* v. *Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff's claims would still be dismissed.  *See, e.g.*, *Shue* v. *United States*, 466 F. App'x 51, 51 (2d Cir. 2012) (summary order) ("[Plaintiff]'s constitutional claims against federal officials are properly analyzed as claims pursuant to *Bivens* ... rather than 42 U.S.C. § 1983.").  In *Bivens*, the Supreme Court created an implied damages remedy to compensate a petitioner who suffered injury as a result of federal agents' violation of his rights under the Fourth Amendment.  403 U.S. at 397.  Subsequent cases, however, underscore the narrowness of its reach.  Following *Bivens*, the Supreme Court recognized two other implied constitutional causes of action: in *Davis* v. *Passman*, 442 U.S. 228 (1979), and *Carlson* v. *Green*, 446 U.S. 14 (1980).  *Davis* recognized a damages remedy for gender discrimination under the Fifth Amendment's Due Process Clause, *see* 442 U.S. at 248-49, while *Carlson* recognized a damages remedy for failure to provide medical treatment to an incarcerated individual under the Eighth Amendment's proscription of cruel and unusual punishment, *see* 446 U.S. at 23.

Beyond these three cases, the Supreme Court has declined to recognize an implied cause of action for damages under the Constitution.  *See Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Indeed, since its decision in *Carlson*, the Supreme Court has expressed caution as to the prospect of expanding *Bivens*

further.  *See id.* at 1855-56.  In *Abbasi*, the Supreme Court described the three approved *Bivens* claims with a striking degree of specificity: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."  *Id.* at 1860.  As other courts in the Second Circuit have noted, the Supreme Court's opinion in *Ziglar* makes "clear that the *only* recognized implied rights of action are the narrow situations presented in *Bivens, Davis,* and *Carlson,* and lower courts must scrutinize attempts to expand the *Bivens* remedy, even where courts had assumed the availability of such a remedy."  *Gonzalez* v. *Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (summary order); *see also Silva* v. *Canarozzi*, No. 18 Civ. 1771 (MPS), 2019 WL 1596346, at *2 (D. Conn. Apr. 15, 2019); *Rivera* v. *Samilo*, 370 F. Supp. 3d 362, 367 (E.D.N.Y. 2019).

Courts are required to follow a "rigorous two-step inquiry ... to determine whether to imply a *Bivens* cause of action in a new context or against a new category of defendants."  *Samilo*, 370 F. Supp. 3d at 367.  The first step requires the court to "determine whether a plaintiff's claims arise[s] in a new *Bivens* context."  *Id.*  "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court [*i.e.*, *Bivens, Davis,* and *Carlson*], then the context is new."  *Ziglar*, 137 S. Ct. at 1859-60.  Moreover, the Supreme Court has cautioned that "even a modest extension is still an extension."  *Id.* at 1864.

36

If the context is indeed new, then the court must discern whether there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). A special factor is one that "cause[s] a court to hesitate" before answering in the affirmative "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "The threshold for concluding that a factor counsels hesitation 'is remarkably low.... Hesitation is a pause, not a full stop.'" *Ojo* v. *United States*, 364 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (quoting *Turkmen* v. *Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734, at *9 (E.D.N.Y. Aug. 13, 2018)).

Additionally, the court must ask "whether any alternative, existing process for protecting the injured party's interest" exists that may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 137 S. Ct. at 1858. "If there is an alternative remedial structure present ..., that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Of potential significance to the instant motion, "[i]t matters not whether plaintiff's alternative claims w[ould] succeed." *Ojo* v. *United States*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391, at *14 (E.D.N.Y. Aug. 15, 2019) (citing *Sanford* v. *Bruno*, No. 17 Civ. 5132 (BMC), 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (finding the remedies that existed "to address plaintiff's situation here are thus adequate for purposes of determining whether to imply a *Bivens* remedy — even though

those remedies did not work in this instance")), *report and recommendation adopted*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019).

Plaintiff's claims here — that USCIS, Cioppa, and OLAP violated: (i) his due process rights by denying the I-360 petitions on the basis of Plaintiff's arrests,[17] and (ii) his equal protection rights by treating aliens differently from citizens[18] — are far different than the three types of approved *Bivens* claims. *See Oliveras* v. *Basile*, No. 16 Civ. 9619 (KPF), 440 F. Supp. 3d 365, 369-70 (S.D.N.Y. 2020).  They are, in essence, Fifth Amendment due process and equal protection claims, and for that reason, the Court finds they present a new context.  And, at the second step of the analysis, the Court finds special factors that counsel against extension of the *Bivens* remedy, including the fact that Plaintiff has several remedies to address his grievances with the Federal Defendants, some of which he attempts to utilize in this lawsuit, including tort claims for malicious prosecution.  *See id.* at 372-75; *Mejia-Mejia* v. *U.S.*

---

[17]    The circumstances Plaintiff raises in his opposition brief — that his wife's permanent residency application was denied (*see* Pl. Opp. 11-12) — fall similarly into this category.

[18]    In any event, classifications in the immigration context are subject only to rational basis review.  *See Domond* v. *INS*, 244 F.3d 81, 87 (2d Cir. 2001) ("Distinctions between different groups of aliens are subject to rational basis review.").  Plaintiff has failed to rebut the presumed rational basis for USCIS's classification decisions regarding asylum applications.  *See Xu* v. *Cissna*, No. 19 Civ. 2584 (KPF), 2020 WL 240839, at *11 (S.D.N.Y. Jan. 16, 2020) (rejecting equal protection challenge to immigration rule that "discourage[s] frivolous, fraudulent, or otherwise meritless asylum application[s] filed solely to obtain work authorization").

*Immigration & Customs Enf't*, No. 18 Civ. 1445 (PLF), 2019 WL 4707150, at *4-

6 (D.D.C. Sept. 26, 2019).[19]

### c.   The SAC Fails to State a Claim for a Violation of 5 U.S.C. § 702

Plaintiff adds 5 U.S.C. § 702 as a source of authority for his fifth claim,

which purports to allege due process and equal protection violations.  (*See*

SAC 46-48).  Under the Administrative Procedures Act ("APA"), a plaintiff

"suffering a legal wrong because of agency action, or adversely affected or

aggrieved by agency action within the meaning of the relevant statute," 5

U.S.C. § 702, may sue to compel that agency to act, but "only where a plaintiff

asserts that an agency failed to take a *discrete* agency action that it is *required*

*to take.*"  *George* v. *Gutierrez*, No. 1:04 Civ. 3901 (ENV) (LB), 2007 WL 1029002,

at *6 (E.D.N.Y. Mar. 28, 2007), *aff'd sub nom. George* v. *Evans*, 311 F. App'x

426 (2d Cir. 2009) (summary order) (citing *Norton* v. *S. Utah Wilderness*

*Alliance*, 542 U.S. 55, 64 (2004)) (emphasis in *Norton*).  The Second Amended

Complaint fails to identify any action that USCIS was required to take, and so

fails to state a claim pursuant to § 702.

Undaunted, Plaintiff argues that by denying the I-360 petitions because

of the State Court Proceeding, Cioppa and OLAP "erroneously deprived"

---

[19]     Even if the Court were to recognize a *Bivens* remedy here, Plaintiff has failed to plead
any facts describing the personal involvement of the Federal Defendants in his alleged
Constitutional violations.  The doctrines of vicarious liability and *respondeat superior*
are inapplicable to *Bivens* suits; rather, "a plaintiff must plead that each Government-
official defendant, through the official's own individual actions, has violated the
Constitution."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 676 (2009); *see also Thomas* v. *Ashcroft*,
470 F.3d 491, 496-97 (2d Cir. 2006).  Therefore, Plaintiff fails to state a claim under 42
U.S.C. § 1983, even if that claim were construed as arising under *Bivens*.

Plaintiff and HBP members "of the acquisition of permanent residence and [have] unconstitutionally discriminated against Plaintiffs based on AAG's false charges and the void contempt arrest on October 2016." (SAC 46). He argues that "Defendants' denials should be reversed, because the USCIS did not provide a cause of action, only a form of relief, and because Cioppa's factual allegations do not establish a plausible equal protection or due process protections." (SAC 47). These contentions are difficult to parse but, at any rate, are undermined by the USCIS's decisions, which, as described above, were made on grounds unrelated to Plaintiff's past judicial entanglements. Because USCIS's and OLAP's decisions were based on reasons that are entirely consistent with law, Plaintiff fails to state an APA claim.

### 8. The Court Declines Subject Matter Jurisdiction over Plaintiff's State-Law Claims Against the Federal Defendants

Finally, Plaintiff alleges state-law claims for intentional infliction of emotional distress, negligence, and breach of duty. Plaintiff has not stated any applicable statutory basis for this Court's jurisdiction over such claims. Rather, in support of subject matter jurisdiction, Plaintiff invokes 5 U.S.C. § 552(a)(4)(B), which authorizes a district court to order the production of improperly withheld records from an agency to a complainant, and 5 U.S.C. § 552(a)(6)(C)(i), which deals with exhaustion of administrative remedies in the context of a request to an agency for records. (*See* SAC 5).

While Plaintiff does invoke federal question jurisdiction under 28 U.S.C. § 1331, there is no invocation of diversity jurisdiction under 28 U.S.C. § 1332, nor does Plaintiff plead any facts to support the finding of diversity jurisdiction.

Indeed, Plaintiff lists his address in the Bronx, defeating complete diversity. *See id.* Therefore, the Court cannot exercise jurisdiction over these claims pursuant to diversity jurisdiction. *See Hallingby* v. *Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). And since the Court has dismissed all of Plaintiff's claims arising under federal law, this Court may decline to exercise supplemental jurisdiction as well. *See Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)). It declines to do so here.

## CONCLUSION

For the reasons above, Defendants' motion to dismiss the Second Amended Complaint is GRANTED. Plaintiff's Second Amended Complaint is dismissed with prejudice, except for his state-law claims of intentional infliction of emotional distress, negligence, and breach of duty, over which the Court declines to exercise jurisdiction.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 44 and 47, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      August 12, 2020
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Edwin Rivera
1428 Zerega Avenue
Bronx, NY 10462-5410

42